STATE OF TENNESSEE et al. v. BANK OF COMMERCE et al.

(Circuit Court, W. D. Tennessee. March, 1892.)

1. TAXATION—EXEMPTION IN CHARTER OF BANK—TAX ON BANK SHARES.
   The charter granted in 1856 by the state of Tennessee to the Bank of Commerce, which provides that the bank "shall have a lien on the stock for debts due it by the stockholders, * * * and shall pay to the state an annual tax of one half of one per cent. on each share of capital stock, which shall be in lieu of all other taxes," exempts from taxation the property of the bank as well as the individual property of the shareholders in the corporate stock and its shares.

2. SAME.
   Such construction of the charter is not affected by the fact that decisions of the supreme court of the state, holding the charter tax to be a tax on the corporate property, and only an exemption of the corporation itself, were overruled by the United States supreme court, which decided that the charter tax was a tax on the shareholder only, and an exemption, therefore, of the shareholder, since such decision does not exclude from the exemption the corporation and its property.

3. SAME—INCREASE OF CAPITAL STOCK.

The exemption extends to the increase of the capital stock, subsequent to the original charter, authorized by law, and not restricted by the charter, notwithstanding such special privileges were forbidden by the state constitution of 1870, since a limitation of the exemption to the previously existing stock would be invalid, as impairing a contract obligation; the right to increase the stock being a charter privilege.

In Equity. Bill by the state of Tennessee and others against the Bank of Commerce and others, filed in the chancery court of the state, to collect taxes assessed on the capital stock of the bank. The cause was removed to the United States circuit court as involving a federal question. Heard on bill and demurrer. Demurrer sustained, and bill dismissed.

Metcalf & Walker and F. T. Edmondson, for plaintiffs.
Taylor & Carroll, for defendants.

HAMMOND, J. The charter of the defendant bank contains this clause:

"Said institution shall have a lien on the stock for debts due it by the stockholders before and in preference to other creditors, except the state for taxes, and shall pay to the state an annual tax of one half of one per cent. on each share of capital stock, which shall be in lieu of all other taxes."

This bill is filed to collect taxes for the years 1887 to 1891, inclusive, amounting in the aggregate to $46,068.75. The taxes are assessed under acts of the legislature, which provide, among other things, as follows:

"And in cases in which, by the terms or legal effect of the charter, the shares of stock in any corporation are wholly or partially exempt from taxation, or in which a rate of taxation on the shares of stock is fixed and prescribed and declared to be in lieu of all other taxes, taxes for state, county, and municipal purposes shall be assessed and levied at a rate uniform with the rate levied upon other taxable property upon the capital stock of said corporation, the value of which capital stock shall be fixed and returned by the assessor as being equal to the aggregate market value of all the shares of stock in said corporation, including the net surplus."

The bill sets out historically the legislation concerning the taxation of the bank, previous attempts to collect taxes thereunder, certain litigation arising concerning those attempts, and generally so states the facts that by the demurrer which the defendant has filed the question is presented whether or not the assessment sought to be enforced is valid in relation to the claim made by the bank that the legislation violates the obligation of the charter contract, and is void under the constitution of the United States. A federal question being thus at issue, the case was removed to this court from the state chancery court, wherein the bill was originally filed.

Apart from any embarrassments arising out of the adjudications that have concerned this charter, and others precisely like it, in respect of the subject of taxation, I conceive that the ordinary use of the phrase, "in lieu of all other taxes," as distinguished from any technicalities whatsoever, always imports that none other than the tax specified, however described, can be demanded. Nor, so apart, should I conceive that it was at all material by what designation

the sum to be paid "in lieu" of other sums might be called, whether a tax, a bonus, a price paid for the privilege or a debt or obligation of any designation whatsoever; nor whether the sum, however called, should be absolutely fixed, should be ascertainable by some self-adjusting standard, or some scheme or method so devised that the amount could be readily known; nor whether the second parties to the contract should have the sum to pay individually, or in some aggregate capacity, or that it should be paid by some one else, or in any way designated in the contract. If this were an ordinary contract between individuals, all these varying conditions would be absolutely open to any arrangements the parties might choose to make. So they were to the state of Tennessee and Samuel R. McCamy, James Whitesides, John L. M. French, Edwin Marsh, and James C. Warner, "their associates and successors," when they set about the business of constructing "an institution," which has developed into the Bank of Commerce. It is altogether true that in and about that business, and in drawing up the "contract" in the form of a "charter" to manifest the agreement of the parties, the state will not be presumed to have curtailed its powers of taxation further than the words of the instrument shall plainly express, or by necessary implication shall be plainly indicated, but otherwise all the conditions above suggested were open to those parties absolutely. The same rule of plain expression or necessary implication applies in the construction of all contracts, not more to charters than to others, except that the courts, perhaps, are more careful in dealing with such cases than others for obvious reasons of public benefit, though in strictness the courts should not less carefully deal with any contract whatever.

It is an exaggeration of this carefulness, however, to suppose that the words of a contract about the taxation of a bank are to be differently construed than the same words about any other subject to which they would fitly apply, merely because they are applied to a matter of taxation of a corporation with an irrepealable contract of exemption. The same carefulness of construction about any other subject would produce the same result. If, for example, these citizens had made a contract with the state to build the capitol, and it had been provided that they should pay to the state from time to time a tax of one half of 1 per cent. on each installment of the money paid out by them for the work, "which shall be in lieu of all other taxes," could it be said that these words would receive any other construction than they do when they are applied to the taxation of a corporation or its stock? Or that, because the power of the state was supreme in the premises, and it might, in addition to this tax, have levied a tax upon these citizens individually, each for himself, or upon the whole in the aggregate, a further sum for the privilege of having had the contract awarded to them, or a further tax upon the property used in the construction of the capitol,—so much for the stone, so much for the iron, and so on, if you please,—can it be that these circumstances would change, in any respect, the meaning of the words? A habit of doing business in this regard by the state, and of levying the tax in a particular manner, would aid a court in

arriving at the meaning of the contract undoubtedly; but, after all, the words would stand out as expressing that intention to have been just what they import to a fair intelligence, unobscured by any subtleties of meaning developed to accomplish a particular purpose of evading their force and mitigating the unpleasant or undesirable results of their use. It were better that the courts should boldly overrule the decisions which have shackled the sovereign power of the state over taxation than to resort to mere subtleties of construction that shall break down the plain meaning of plain words to the plain people who invest their money upon the understanding that plain people have of such words.

Another fact to be remembered while reading this statutory contract is that it is not a revenue law; it is not a statute concerned with the exercise of a taxing power, except incidentally, as it were. The power of the state in the matter of selecting the subjects of taxation, and in dividing and subdividing those subjects at pleasure, is quite absolute, whether in relation to banks or other corporations and their corporate property, or to the property of citizens. Naturally, corporate property, by its very character, suggests a somewhat uniform classification or subdivision for taxing purposes, but, as will be presently shown, there is no fixed or always uniform classification from which so much can be implied as has been urged in argument here. Ordinarily we say that there is—First, the franchise; second, the capital stock; third, the shares of stock, which, in the strictest sense, however, are not corporate property at all, but the property of the individual holder, unless there be confusion in the use of the term; and, fourth, the other property, not included in any of the other three. But this natural and convenient subdivision is not always adhered to, and is often still further subdivided, and might be subject to almost innumerable subdivisions, just as other property may be. Even the franchises may be separated into different subjects of taxation by taxing each that is granted separately. The capital stock, in the very beginning, might be subdivided into gold and silver money and legal tender paper money, if there be such paid in; afterwards into bonds, bills receivable, mortgages, exchange, etc.; then profits or income or surplus might be separately taxed,—and often is; and the ordinary subdivisions of real and personal property might be carried on, as they often are, in revenue laws, almost ad infinitum.

But, as before remarked, this is not a revenue law engaged with such subdivisions, and, it seems to me, rather too much stress has been laid upon the separable subjects of taxation in relation to corporate property as an element in the construction of this charter. It is true that the cases look to it very closely, and it has been seized upon as a very convenient pathway out of the difficulty of maintaining restrictions upon the sovereign power of taxation, which seem disastrous to that power. Yet I do not think the cases have broken down the ordinary rules of statutory construction, and established a special rule, based upon these arbitrary subdivisions, to be applied to corporate charters for the purpose of saving the state from the improvidence of those who have fettered this power. The rule of strict construction has been established beyond question, but the cardinal

rule remains that the intention of the parties must fairly be ascertained; and it has not been established that an unfair advantage shall be given one of them because it is a state, which has not made a wise bargain, and has granted that which should have been withheld. The strictest adherence to the cases does not require of the court anything more than a rigid observance of the rule that the state shall not, by anything short of express words or necessary implication, be held to have surrendered one iota of its taxing power. But it is a perversion of this principle to hold that if, by any possible narrowness of construction, any subtlety of reasoning, or any nicety of verbal interpretation, the taxing power may be saved, the courts shall save it at the sacrifice of the other parties to the contract, who have put their money on the faith of the state to stand by that which it has fairly granted in the way of exemption from taxation.

Another consideration, before we take up the language of the act, is pertinent here. Next to this rule of strict construction the state most insists upon treating this charter tax as one strictly levied upon the shares of stock in the hands of the individual shareholders, and consequently claims that the exemption is one belonging to the shareholder alone, applicable only to him and his property interest, and not at all to the bank. But, if it be granted that the tax is of that precise nature, does the conclusion follow, necessarily, in logical sequence? Concede that a tax upon the shareholder is not a tax upon the bank directly or indirectly, and grant the other premise also that the surrender of the taxing power shall never be presumed, and does the conclusion follow inevitably that an exemption of their bank and its property may not be granted to these shareholders in consideration of a charter tax upon them individually or their individual property? Why may not the legislature, with all conditions open to it, as they were, exempt the bank from all taxation in consideration that the shareholders shall pay a tax, fixed, no matter how, by agreement between them, either upon their shares in that bank or any other property the shareholder might own? Why could not they agree that such an exemption should be granted to the bank if each stockholder should pay his share of the tax, and secure it by a lien, say upon his land, for an example? Or why might the tax not be fixed at so much per acre of the land held by each shareholder, or in any other way that may be suggested, and, when fixed, however agreed upon, form the basis of an exemption of the bank and all its property? These circumstances would require close scrutiny, to be sure, and would shed their own light upon the question of the intention of the legislature; but if, in any light, the intention was plain, the exemption would stand. The basis for the logical conclusion under consideration would be an affirmance that no exemption of a bank and its property can inure to its benefit unless it be predicated of a tax on the bank itself or its property, which is obviously unsound. In thus presenting what seems to me a fallacy of that contention which would limit this exemption to one of any further tax upon the shareholder in respect of his property in the share, because, forsooth, the tax levied and demanded by the charter in consideration of the exemption is upon his property, and not that of the corporation, I do not overlook the

force of the fact that it is a specific tax, and that the surrender of the general taxing power is never to be presumed, but only call attention to the ease with which such an argument may be made to go beyond any real force that belongs to it.

The real question is, to what exemption, and not to what tax, do the words of the statute aptly apply? And it is a begging of this question to assume that the exemption shall be confined to a bare release from further taxation of the thing taxed, and that only. If they aptly present more than one construction, so that there be more than one exemption that may have been described by the words, which of them lies within the purport or design of the statute? Or may more than one exemption be included? Again, I say that the legislature was not constructing a revenue law carefully subdividing and classifying the subjects of taxation, and legislating as to each of these in such manner as to regulate the tax on each with precision, but was constructing a bank charter, and regulating the franchises, rights, privileges, immunities, duties, and obligations of the bank. Presumably every provision in the charter pertains to the bank. In the absence of all other guidance, it is the franchises, the privileges, rights, duties, and immunities of the bank, or of the citizens authorized to become a corporation in their corporate, and not their individual, capacity, with which the legislature is dealing. The citizens in their individual capacity, and in relation to their individual property, more especially in relation to that distinctively individual property which each has as a chose in action, called a "share of the stock" in that particular corporation which is being constructed, may come within the scope of the statute, and receive regulation by it, possibly; but clearly such provisions are secondary and subordinate, not primary and paramount, and, if there be clearly a doubt in the statute as between these, that which is primary and paramount in consideration or importance would be benefited in the resolution of the doubt, rather than that which is secondary, subordinate, or incidental. When the subject of taxation is presented in the process of constructing a bank charter it is the taxation of the bank itself, no matter what design of taxation is conceived, which is first in order of importance, rather than of the individuals in their individual capacity, who are authorized to be a bank corporation; and any words about taxation, if there be no ulterior purpose to accomplish by construction, will be construed with reference to that fact. The taxation of the given citizens above named as incorporators in their individual capacity belongs more directly to the general revenue act, which is passed from time to time as the needs of the state require, and it is there we would look usually for provisions taxing their property, as well in corporation stocks as in other things. It is not suggested that they may not, in relation to their property interest in the stock of the corporation undergoing construction, be taxed by the charter, for they may, and conclusively have been, so far as this charter is concerned, as ruled by the supreme court of the United States in a case involving a charter just like this, but only because the words used in levying the tax have been ruled to fairly and reasonably describe that kind of a tax; but non constat that any *exemption*

granted in consideration of this taxation shall be, because it is that kind of tax and not some other, taken out of this rule of construing all provisions as applying to the bank rather than to the individuals composing it, and attached inseparably to the tax itself and the owner of the thing taxed. The exemption is one thing, the tax another; and it is a mistake to suppose that they go indissolubly together, and break down the rule of construction we are now applying just here. Granted that the legislature in its wisdom chose not to tax the franchises, nor the capital stock, nor the other property of the bank, but to tax the shares in the hands of the shareholders, to be paid, for convenience and certainty by the bank, vicariously, and not directly by the shareholder, and it does not follow at all that any provision found in relation to any exemption from further taxation is to be taken out of the general purport of the statute as one providing rights, privileges, immunities, and duties for the corporation, and limited and restricted to this secondary purpose of taxing the individuals, to give them the benefit of the exemption, rather than the bank. The charter was not concerning itself with these individuals, qua individuals, but as incorporators; and the tax and its accompanying exemption might have been each designed as a benefit to the corporation, and consequently to its individuals also, albeit the tax was levied on the individuals only, and not the corporation,—out of the natural order of things, to be sure, considered with reference to the purpose in hand while making a charter. But because there was an aberration from the natural order in affixing the tax upon some one or some thing other than the bank, it is not certain that the aberration from the natural order of legislation was continued in providing the exemption from further taxation.

Again, if the exemption be considered as one granted solely for the benefit of the shareholders in their individual capacity, or each in his individual capacity, why should the benefit of the exemption to them, or to each of them, be limited to a bare release from a further tax on each individual in respect only of his share of stock, and not reach further, and include in its benefits that concomitant interest which each has in the property of the bank,—the interest of having the bank itself taxed as lightly as possible? If the shareholder has given a consideration for the exemption in a permanent tax upon any property that he has, why should not the benefit of the release extend to all his corporate rights or interests, represented in some sense at least by the shares,—if the words and the scope of the legislation may include such extended benefits? There is no reason except that the state wishes now to restrict that which was granted to the narrowest possible limits by the strictest possible construction, and with the danger of unfairly applying that strictness we have already dealt in this opinion.

Let us now take the language of this act of the legislature, and, reading it with a purpose not to abate or restrict the state's powers of taxation one jot beyond what the words fairly import, on the one hand, and a like purpose not to deprive the stockholders of any benefit to themselves or their bank fairly granted to them as a basis for the investment of their money in this insti-

tution, on the other hand, and what does it mean?    Both
sides contend that the sentence containing the exemption is
elliptical.   Each side supplies the ellipsis in its own way.   The state
would read the extended phrase: "Which shall be in lieu of all other
taxes upon said shares of stock;" the bank would read it: "Which
shall be in lieu of all other taxes upon said institution."   Either read-
ing would make the case clear for the party proposing it, but is only
another mode of presenting the contention between them.   Taking
the sentence as it is, and the first criticism I should make would be
the somewhat obscure, if not inaccurate, use of the final words,
"other taxes," without a repetition also, in some form, of the word
"pay," which is just as important in relation to the antecedent, or as a
part of the antecedent to which the relative pronoun "which" refers,
as the word "taxes."   Remembering that this is not a revenue law,
but a charter,—an act designed to define all that needs defining con-
cerning "an institution," as it is called,—and it seems to me a very
unnecessarily narrow limitation, and one that is not fairly permissible,
to refer "which" only to the preceding word, "tax," as its antecedent.
The full sentence comprises two independent subjects, each a privilege,
or else one a privilege and the other an immunity, perhaps.   One pro-
vides a lien upon the shares of stock as against the stockholder for
his debts, and the other this immunity, whatever its extent, from fur-
ther taxation.   Now, why should the same breath, so to speak, create
for the bank a lien, and for some one else than the bank an immunity?
The restriction of the relative pronoun "which" to the bare word "tax"
is necessary to accomplish this, and ignores wholly the leading
words "said institution shall pay" as a part of the antecedent, which,
it seems to me, is exactly the words, "said institution shall pay to the
state an annual tax," no matter what or how described, so far as it re-
lates to the mere grammatical analysis of this sentence.   Now, if we
are permitted to supply any ellipsis instead of adding to the end of
the sentence words selected to express a given meaning, I should in-
sert words expanding the relative pronoun into its proper antecedent,
and defining the word "other" in relation thereto, or in its relation to
the subject of regulating by its charter the payment by the bank of
taxes, whether its own taxes or those of some one else, not impossibly
an entire stranger, if the parties were so minded.   Thus reconstruct-
ed, the sentence would take the form of full direction, and read thus:
"And said institution shall pay to the state an annual tax of one half
of 1 per cent. on each share of capital stock, which payment of this
annual tax to the state shall be in lieu of all other payments of taxes
for that year."   This would be fairly within the scope of the whole act,
which, while constructing a charter for a bank, is regulating the bank
in the matter of its payment of taxes, the amount to be paid, the per-
son to be paid, the frequency with which the payments must be made,
and the force and effect of the payment when made.   The final word
"taxes" loses none of its force, but gathers perspicuity by continued
association in this construction with the word "pay" and the word
"institution," for the benefit of which this whole act was constructed
and passed.   It is not even suggested in argument, much less claimed,
that the very strictest construction of the words "to the state" would

limit the exemption to one from further state taxes only, and would not include any exemption from county or municipal taxes, but it is conceded that these are included, so far as the shareholders' property is involved. Yet the rule of strict construction in favor of the taxing power of the state would be no more misapplied to such a limitation than the other.

Clearly the awkwardness of the sentence arises out of the compression of the idea into words and phrases that shall be brief and comprehensive, rather than explicit. Grammatically the analysis of its parts should be considered in relation to all that goes before, not only in the sentence, but likewise in the whole document or instrument. The "pregnant brevity" of the style should not be overlooked, as it affects the syntactical arrangement of the sentence. The phrase, "in lieu of all other taxes,"—which is the subject of the great contention between these parties,—is, naturally, either an adverbial phrase, modifying the verb "pay," or an adjective phrase, qualifying the noun "tax," or rather the subject "annual tax." Strictly it should have been more closely placed to either the verb or the noun, to display with precision the intention of the writer in that behalf; but unfortunately he has chosen to convert it into a clause introduced by a relative, and as a co-ordinate and somewhat independent affirmation, rather than as a modifier in the shape of either phrase or clause, adverbial or adjective, which arrangement intensifies that obscurity of meaning giving rise to this lawsuit. If he had modified the verb by placing the words adverbially near it, the meaning would be quite plain in favor of the contention of the bank in this case, though it would still not be entirely free of doubt whether the bank was to be exempt, or only the stockholder, or both, as any one may see who will so reconstruct the sentence. So, if he had modified the noun or subject "annual tax" by placing the phrase adjectively in immediate contact therewith, the arrangement would have been somewhat more favorable to the state than now it is, but scarcely less doubtful than by the present arrangement. Perspicuity required that there should have been an entirely new sentence or independent clause, at least, with more amplitude of expression to convey either of the meanings now contended for by these parties. The structural form adopted forces us to determine whether the relative "which"—relative in form —is really intended to be a relative or something else, and, if used as a relative, whether it bears only the simple subject, "annual tax," or teems with the complex subject, "said institution shall pay to the state an annual tax." I have already indicated my preference for this latter construction, simply because the act is dealing with the rights, duties, conduct, privileges, and immunities of the "said institution" primarily, and not with a tax upon the citizen or his property, individually.

The word "which" gives writers a great deal of trouble, and its usage is varying, as the consultation of any standard work on grammar will show. It is often equivalent to "and it," or "that," used restrictively. If either of these be substituted for it here, the sentence reads more favorably for the contention of the state in this case, though it does not settle the doubt by any means. But this usage is

said to be not generally observed by modern writers in this century, and the rule is given that "which" is to be used in preference to "that" or "and it" whenever its clause introduces a new fact about the antecedent; "that" is to be preferred when the clause is dependent, and limits or defines the antecedent. Maxwell's Adv. Gram. §§ 266, 282. The use of the word in this sentence seems to accord with this rule, and the clause is independently introducing a new fact about the antecedent, and not limiting or defining it. But what is an antecedent? "The antecedent may be a noun, a pronoun, a phrase, or a clause." Maxwell's Adv. Gram. §§ 280, 570–572. See, also, Reid's Higher Eng. pp. 109, 111, 113, 121, 122. It seems to me that to supply the simple word "tax" as the only antecedent here, and to read "which tax shall be in lieu of all other taxes," is to adopt the restrictive and limited use of the equivalent "and it," or "that," and not to regard the obvious introduction of a new fact about the antecedent, which this clause is clearly intended to accomplish. But if we take the whole preceding clause, viz.: "Said institution shall pay to the state an annual tax of one half of 1 per cent. on each share of capital stock," as our antecedent, about which the new idea is now introduced by this clause,—itself introduced by the relative "which," —and the meaning becomes quite clear that this annual tax, whatever its character or nature, and upon whatever it may be levied, whether on property of the bank itself or somebody else's property, is a payment to the state by the bank—and, by the way, the security and certainty of this payment by the bank in a lump sum, rather than collecting the same in driblets of more or less widely scattered stockholders, is not to be overlooked as a part of the consideration given for this exemption—"which" shall be in lieu of all other payments by it of any taxes other than this, whether this be a tax upon its own, its stockholders', or any one else's property. It is a universal exemption for each recurring year from all other tax burdens than this, and this construction accords with the design or scheme to create an institution which shall be attractive to investors. If this were not the intention, if this were not the design or scheme, this provision, limited as the state would now limit it after so many years of acquiescence, has no appropriate place in the charter of a bank, but belongs more properly to a revenue law, and may quite as well have been left out, for it is almost demonstrable that the bare exemption from a higher rate of taxation upon the chose in action of the shareholder, directly levied upon him individually qua shareholder, and yet subject to a larger tax upon him, by the indirect process of a tax upon the bank or its property, belonging to him, qua shareholder, would be a mere shadow of the substance he desired and fairly might think he was obtaining. Indeed, it operates as a burden upon him over and above the ordinary shareholder not having this exemption, or may so operate, confessedly, under certain conditions. I cannot, upon this analysis of the language of the charter, apart from the adjudications, think that the legislature intended by those words anything less than a complete and universal exemption of both the bank and the shareholder from any tax other than the charter tax, however improvident it may have been.

Historically this construction is supported by the surrounding circumstances at the date of this charter,—in 1856. I have taken some pains to examine the legislation of this state and North Carolina, so far as I could find it, both in the grants of charters and the taxation of corporations by general revenue laws, and I find that this method of taxing corporations by a levy of 25 cents, or in one case not more than 50 cents, upon each share of stock, or by the levy of a fixed per centum upon each share, was the method in general use. There is not the least doubt that the legislature and the people understood this to be, practically, however it might be in strict technical analysis of the nature of corporate property and its classifications for taxation, as well understood then as now, among lawyers, a tax upon the corporate property, or a tax upon the corporation, to speak more broadly. The supreme court of the state had so decided as early as 1836, and it does not matter, in the mere history of the subject, that the supreme court of the United States, forty years later, and twenty years after the date of this charter, did not think this understanding correct, and ruled that it was a tax on the chose in action of the shareholder, which in the nicest technical classification is in no sense corporate property at all. The supreme court of Tennessee understood that a share of stock was not corporate property, and in 1836 called attention to it; and yet it was well known historically that such was the Tennessee method of taxing corporations. This charter must be read by the light of that fact in resolving any doubts about a limitation upon the exemption. It was not considered by the legal tribunals of the state or by the legislature that this charter tax was a tax upon the shareholder's chose in action, and, if it be technically so, this charter, historically considered, was not constructed or acted upon by any one until now, in view of that fact, or of any technical niceties arising out of it; and it seems to me plain enough to be unfair in construing the exemption to limit it by a resort to those niceties of classification as against the general understanding of the time of the grant, however unfair, also, it may have been to exempt the shareholder by a resort to such niceties to include him against that general understanding also. The courts do not arrive at the intention of the parties to a contract, or reverse that intention, by such exactness of classification, or rather by changes of opinion concerning it.

As I have said before, it is my judgment that too much stress has been laid upon this arbitrary, and by no means uniform, and altogether artificial, subdivision of corporate property into subjects of taxation. Taxing laws and fiscal systems may be wisely adapted to these classifications, and there they may be highly useful, but in constructing the franchises of a charter they have no such dominant place as the argument here, and the theory of this claim for further taxation assigns to them, and must assign to them, in order to escape the plain significance of this grant of exemption from taxation. It is not more competent to impair the obligation of the contract by assigning to the legislature a notion about the technical classification of the specific thing taxed, which it is plain from surrounding circumstances the legislature did not regard as

material to the work in hand, if they were aware of the technicality, as no doubt they were, it may be assumed, than to otherwise unreasonably assign meanings to words which were not intended to be used in that meaning. In other words, I do not believe that the legislature intended to limit this exemption from taxation by any notion that it had, or might have had, concerning the precise technical character of the property upon which it levied the tax as being corporate property or individual property. Whichever it was, it had the right to tax it, and, in consideration of that tax and other considerations, to make the exemption as broad as it chose. The whole subject was open to it, and there is not the least indication in the act itself or the environment at its creation that this technical classification was deemed to be of the vast importance now attached to it. Here I will note that even a slight examination of the revenue laws of this and other states, of text writers and of cases shows that there is no such fixity of subdivision and classification of corporate property, any more than other property, as would enable a court to affirm that this act was constructed in relation thereto, or as would justify a resort to any classification that might be imagined as a conclusive evidence of intention in respect of this exemption. Exemption from taxation generally is pertinent to the owner, and not to the thing, and we look rather to the person to be benefited than to the thing affected by it, while, when we turn to the tax, the thing becomes paramount, rather than its owner. Hence the propriety which I have insisted upon of looking at the act as a charter, and not as a taxing act, or a revenue law, carefully affixing the burdens to each article of property; and, if so considered, this classification of subjects of taxation becomes of far less importance in the charter than it would be in the other. Besides, shares of stock, although only individual choses in action of the owner, and not corporate property, are often, for obvious reasons of association of ideas, confused with corporate property. Our legislature has, confessedly, so confused it, and our state judicial decisions have treated this as a tax on corporate property, and this is a practical application breaking down the distinction to that extent at least.

In Farrington v. Tennessee, 95 U. S. 679, Mr. Justice Swayne enumerates as subdivisions the franchise, the accumulated earnings, profits and dividends, and real estate, but they are only "some of the objects, in this connection, liable to taxation;" and the division used by the United States legislation referred to by him is quite different, thus: Deposits, capital employed in their business, circulation, and notes of state banks used as money. And it is noticeable that, while enforcing the technical distinction between a tax on shares of capital stock and a tax on capital stock itself as subjects of taxation in order to extend the exemption of the charter to the protection of the shareholders individually, he says also that "each share represents an aliquot part of the capital stock," thus indicating the same confusion by association that the Tennessee authorities proceeded upon. The truth is that "a share of stock" is a bare chose in action in its relation to the shareholder as property, but in its relation to the property of the corporation is a mere structural sub-

division of all the property used as a convenient standard of measurement for parceling it out, very much as a bushel is used to describe quantities or to parcel out the wheat in a bin; and the term "shares of capital stock" may be used appropriately, in either of these senses, descriptively. Until there has been a dividend of profits set aside, to each shareholder his share, or a winding up, 'and a residuum divided and set aside, to each shareholder his share, this chose in action or "share of stock" is very much like an empty bushel of "dry measure" which the owner of the wheat holds in hand ready to measure up and carry away his "share" when the division, either partial or complete, shall be made. This right of taking away, which is the only property interest of the individual, may be made a separate subject of taxation, it is true; but so may the owner's horses, or mules, or cattle, swine, and sheep, and all very arbitrarily; double taxation being easily avoided, and not necessarily an incident of any given subdivision of either the corporate or the other property for the purposes of taxation. But does this fact necessarily imply, against words of universal signification, that the exemption they grant shall be limited to the particular subject taxed? It does not seem to me a necessary implication, however useful and desirable it may be, or however well it may serve the state in escaping from its grant. If a farmer should contract with the state to take a fixed per centum upon the fixed value of his "horned cattle" every year as long as he should live, "in lieu of all other taxes," and the business in which he was engaged were such that, presumably, a release from all taxation upon his farm and his farming operations was the benefit he and the state contemplated by the very making of the contract, could it be at all implied from the fact that "horned cattle" was naturally or otherwise a separate subject of taxation that the exemption should be confined to a release only from the further taxation of "horned cattle?" No matter how strictly the presumption against the surrender of the taxing power should be held, this implication would not be more reasonable because of that strictness.

Chief Justice Waite, in Tennessee v. Whitworth, 117 U. S. 129, 136, 6 Sup. Ct. Rep. 645, 647, makes a largely different enumeration of the elements of taxable value "sometimes found in corporations." He divides these elements thus: "(1) Franchises; (2) capital stock in the hands of the corporation; (3) corporate property; and (4) shares of the capital stock in the hands of individual stockholders." In Texas, bankers were required to list for taxation money on hand, in transit, and in the hands of others subject to draft, except legal tender notes, and their bills receivable, and other credits. If any one of these had been taxed in a charter "in lieu of all other taxes," I do not think the mere fact that money could be so divided, or that money and bills receivable were each a separate subject of taxation, would have necessarily limited the force of the words of exemption. Griffin v. Heard, (Tex. Sup.) 14 S. W. Rep. 892. Nor if "deposits" in the savings banks, belonging in fact to other people, were taxed by their charters, as they were in the tax laws of Massachusetts, one half of 1 per cent., and the charters had made a contract that this should

be in lieu of all other taxes, as practically the non taxation of anything else concerning the banks, except deposits, by the tax laws, did, temporarily at least, exempt everything else, could it be claimed that the exemption of the charter would be necessarily limited to further taxation on deposits, because, forsooth, "deposits" were a separate subject of taxation, not even belonging to the bank, and less to its shareholders, or were, to use the language of Chief Justice Waite, found as an element of taxable value in corporations? Bank v. Boston, 125 U. S. 60, 67, 8 Sup. Ct. Rep. 772. I have noted other examples of these elements of taxable value found in corporations, and it is, I think, an assumption not justified by the facts to affirm that there is anything like such a fixity of this divisibility of the subjects of taxation, either in the theory or practice of taxation, as the argument here presupposes. I may add, in the language of another, that "we agree with counsel for the town that statutes exempting property from taxation should be construed with reasonable strictness, but they should not be so strictly construed as to defeat the obvious intention of the legislature." Town of New Haven v. Sheffield Scientific School, 59 Conn. 163, 166, 22 Atl. Rep. 156.

I have given so much attention to the subject of this elemental divisibility of the subjects of taxation in its relation to corporations because I believe that upon it is based the fundamental fallacy of this attempt by the state to so construct a taxing act that it may evade the force of this exemption. It is predicated of a misconstruction of what has been said by the supreme court of the United States upon that subject, or rather upon a misapplication of it, unless the courts are to resort to these distinctions for the purpose of mitigating the decisions which have permitted the states to make bargain and sale of their taxing power, without the possibility of any restoration of it, except in this mode of unreasonable strictness of refinements in the interpretations of statutory contracts.

Another view of the force of events connected with our legislative history upon the subject of the taxation of corporations relates to the practical construction of these acts by the legislature itself. Until this most recent taxing legislation involved in this suit, the revenue laws practically extended the exemption with the fullest scope to all corporations, whether they had this charter exemption or not. I do not mean to say that the rate of taxation was always as favorable as is found in the charters. Counsel say that when this charter rate was first established it was largely in excess of the prevailing rate on other property, and has become to be less only because of the enormous increase of the rate of taxation. Possibly, they say, it may at some time again become less. However this may be, it is certain that for a very long time the legislature taxed only "each share of capital stock," supposing, as we have seen, that this was a tax on the corporation, and not the shareholders, which error the supreme court of the United States has corrected; but the corporations were not otherwise taxed, nor were the shareholders for a long time, which was a practical construction of the meaning of these exemption charters; and, justly,

other corporations not so favored were put on the same footing, not always precisely as to rate, sometimes less, sometimes more, but always as to the manner of taxation. It must be conceded to the state, as counsel argue, that it cannot be bound to any permanency of methods in taxation, and may at will change its policy and methods, and nothing should be implied against this power. Neither do we imply anything against it. But, like all other parties to a contract, the state, when the question of its intention in the use of words arises, may be held to have intended by those words that which, by its own acts, has been placed upon them as a practical construction of their meaning. There is no injustice in this, nor yet any limitation upon its power to change its acts, and reverse, if it chooses, its operations in that regard. Nevertheless, legisla-tors, like other men, interpret their words by their actions, and to this extent may those actions be examined, without the least restric-tion upon the power to change them at will. Both the individual interest or property of the shareholders and the property interest of the corporation in its aggregate capacity were exempt by this mode of taxation in the practical operations of government at the time these charters were granted, and for a very long time after-wards, until this struggle to get in another tax on one or the other commenced, because, technically, it was not double taxation to tax both, however burdensome it might be; and because, technic-ally, it is a rule to favor the reservation of the taxing power, rather than its grant, in the interpretation of all charters. But just as technically it is the duty of the court to follow the meaning of the words, and hold the parties to the fair and reasonable intention they have manifested, most of all to each other, by those words.

Each side claims with great earnestness and force of argument that this question between them has been settled by the adjudica-tions. The bank claims—at least in one of the several cases we are trying—that the decisions have technically all the force of the principle of res judicata, and the adjudications have been relied on, the facts being apparent from the bill, to that extent. All that has been said heretofore would have been uselessly, it not impertinently, said, if I were of that opinion. Not one of the decisions has, in my judgment, stripped to its bare technical proportions as an adjudica-tion, decided this question. Counsel for the state very properly says that the bank cannot rely first on the overruled decisions of the su-preme court of the state that this was a tax upon the corporate property, and only an exemption of the corporation itself, and never an exemption of the shareholder, to protect it against further taxa-tion of the corporation; and, secondly, upon the decision of the supreme court of the United States, overruling the others, that this is a charter tax upon the shareholder, and not a tax upon the cor-poration, and an exemption, therefore, of the shareholder also; and thus tack the two sets of cases together as a common adjudica-tion that both corporation and shareholder are exempt. The bank could do this if the supreme court of the United States had ever decided that a tax upon the shareholder and an exemption of his in-dividual property in the shares held by him from any further tax

upon those shares as to him extended the benefit of the exemption to the corporate property and to the corporation in its corporate capacity. The supreme court of the United States has never decided this, and for the very plain reason that such a question was never before it, and, under the conditions of the cases, could not have been. It could have had no jurisdiction of such a question through the avenue of a writ of error from the supreme court of the state, because that court had never decided against any claim of the corporation from further taxation upon its capital shares, but always in favor of that claim. Counsel for the bank concedes very frankly that since the supreme court of the United States decided the charter tax to be upon the shareholder, and not the corporation, the supreme court of the state has continued to recognize the exemption as extending to the corporation and its property, notwithstanding that decision; but he argues that this is in violation of its own rule of judgment that the tax and the exemption go hand in hand, and the latter is no broader than the former,—which undoubtedly was the rule of the supreme court of the state until the decision of the supreme court of the United States, above referred to as overruling the others. And, furthermore, he argues that it is in violation of the authority of the supreme court of the United States to so disregard its decision.

I do not care to deal with this conflict of authority, if it be such, nor its perplexities, for it is not necessary. But I may say that the supreme court of the United States has never sanctioned the position, as to these charters we have here, that the tax and the exemption go hand in hand, and that one is not broader than the other. My view is that, whether this be a tax upon the corporation only or the shareholder only, the exemption is broader than the thing taxed, and covers both the corporation and the shareholder. I take it we must all accept the view of the supreme court of the United States that this is a tax upon the shareholder only. Farrington v. Tennessee, 95 U. S. 679. But non constat that the exemption, the stipulation of the charter that this tax upon the shareholder only shall be in lieu of all other taxes, does not extend to the corporation and its property as well as to the shareholder. I have written this opinion to justify my own judgment that it does. The supreme court says it covers any further tax against the shareholder. It does not say that it excludes from the exemption the corporation and its property, nor does it say that it includes it. Until it does say one or the other, we must be contented to get along without its paramount authority. If it should follow the example of the supreme court of the state, which held that, this being a tax upon the corporate property only, the exemption does not include a tax on the shareholder's property, it will undoubtedly overrule this judgment and decision we are now making, if it adheres to its own ruling already made that it is a tax on the shareholder only. If, however, it follows the later example of the supreme court of the state, and interprets the Farrington Case, supra, as that court interprets it,—to cover also in the exemption the corporation and its property,—it will affirm the judgment we make, and for the

reason that we give, namely, that, although the tax is on one, the words of the exemption cover both. So, although I do not think with the supreme court of Tennessee that the supreme court of the United States has already decided the exemption to cover both, I do think it does cover both, and that the court of last resort will so determine. I need not, therefore, further consider the cases in relation to the plea (or demurrer equivalent to such a plea) of res judicata. I should say, however, that in strict technical consideration the supreme court of the state has only inferentially decided that the exemption extends to both the capital stock of the corporation and the shares of the shareholders, the tax assessed and rejected by its decisions being a tax under a general law assessing the real property of all persons, which was assumed by the assessor to extend to the property of the bank, notwithstanding the exemption; and the point was not presented, as it now is, by a specific tax by the legislature upon the capital stock as the property of the corporation. Inasmuch as the real estate assessed by the assessor under the general law could only be exempt under the charter, and because there is no distinction, possibly, between real estate in which the capital stock is invested and the capital stock itself, the decision is in favor of the exemption of the capital stock inferentially, but not directly. Bank v. McGowan, 6 Lea, 703; State v. Butler, 13 Lea, 400, 406; State v. Butler, 15 Lea, 104; State v. Butler, 86 Tenn. 614, 8 S. W. Rep. 586.

The foregoing are the cases of the state supreme court since the Farrington Case in the supreme court of the United States, which was decided there in 1877, and in the supreme court of the state in 1876. Memphis v. Farrington, 8 Baxt. 539; Farrington v. Tennessee, 95 U. S. 679. The first was an assessment of this very defendant bank upon its real estate under the general law, and it was held that the decision of the supreme court of the United States had extended the exemption of the charter to shareholders, contrary to the opinion of that court, and "therefore" the exemption would "protect the capital stock and the shares of the stockholders from any taxation beyond that prescribed in the charter." May not this be a non sequitur? The next case involved the Union and Planters' Bank, having a like exemption, and the same view taken of assessments under the general law of its real estate, and of the effect of the Farrington decision by the supreme court of the United States; but, as before remarked, whatever may be inferred as to the ruling it may make on the questions we have here, or the potency of these decisions, they did not involve the levy by the legislature of a specific tax upon the capital stock, such as has been made under recent legislation, and I am uncertain whether to take them as conclusive adjudications that stock and shareholder are both exempt, although I think they are both so exempt.

The other cases were a direct attack by bill upon the organization of the banks, and a denial of their right to any exemption because of want of title to their corporate franchise, and did not involve this question. On the whole, I think these cases support the ruling we are making, though I do think, with counsel for the state,

that they give too much force to the ruling of the supreme court of the United States as an adjudication of the question, and hence I have examined it in that view. The cases prior to the Farrington Case treat the charter tax and the exemption as limited to the corporate property, and as excluding the shareholder and his property. Their importance here rests in the fact that they hold that, being a tax only on the corporate property, the exemption does not extend further than the tax; that is, does not exempt anything except the property taxed by the charter from further taxation. If that was then true as to corporate property, it is now true as to the stockholder's property, and, the supreme court of the United States having ruled the charter tax to be a tax on the shareholder's property, under the same rule established then by those cases, and never overruled by either supreme court, I think the corporate property would not be now exempt. And herein lies the force of the state's case here; but for the reason stated I do not assent to this narrow view of the exemption, and, not being guided by any authoritative adjudication to that effect, feel at liberty to enforce my own view as to the law of this case, particularly since these cases have been reversed on the main point as to the nature of the tax, whether they have been affected as to the other point concerning the restriction of the exemption because of the specific tax or not. Union Bank v. State, 9 Yerg. 489; Bank v. Memphis, 6 Baxt. 415; Memphis v. Hernando Ins. Co., Id. 527; Memphis v. Farrington, 8 Baxt. 540.

The decisions of the supreme court of the United States before the Farrington Case have been sufficiently noticed by that case itself and the decisions of the supreme court of Tennessee, and do not require any notice at my hands. I have already stated that, in my view, that case only decides that this charter tax is a tax upon the property of the stockholder, and not upon the corporate property, and that the exemption protects at least the property of the stockholder; but whether it protects also the property of the corporation has not been decided. The cases since that time are quite numerous, and all are instructive upon the general subject, but none of them is decisive of this case. The case of New Orleans v. Houston, 119 U. S. 265, 7 Sup. Ct. Rep. 198, it seems to me, quite nearly decides that a tax like this is a tax on the capital stock, and not on the shares of the stockholders; but there the taxing act was thus arranged to defeat the exemption given to the corporation in consideration of the payment of a gross sum. If the language of that act, so clearly indicating a tax on the shareholder, was in fact a tax on the corporation, this might be so held also, as it was in the Tennessee courts; but the Farrington Case is directly conclusive of this view, and we are not at liberty to follow the later case, even if it could be so taken. If the supreme court itself will not acknowledge any overruling of a former case of its own, we hesitate to hold it overruled by implication.

In conclusion, I repeat that the language of this charter levying "an annual tax of one half of 1 per cent. on each share of capital stock" is so ambiguous that it may descriptively designate a tax on

either the corporate property in the capital stock, or the individual property in the shares, and that the supreme court of the state and the United States have disagreed on this point; but, in my judgment, whether it be one or the other, the exemption which is given by the words, "which shall be in lieu of all other taxes," is a protection of both the corporate property and the individual property in the capital stock and its shares, but that neither court has decided this point explicitly since the supreme court of the United States determined it to be a tax on the individual property of the shareholder, although the supreme court of the state has recognized this full scope of the exemption since that time.

The same ruling we have just now made applies to the privilege tax as well as to that upon the capital stock, and for the same reason.

The bank has largely increased, by authority of law, its capital stock since the original charter, and there is another contention that, since the constitution of 1870 forbids these special privileges, the exemption must be limited to the amount of the old stock, and cannot include the new. It is manifest, in the view we have taken, that unless the charter restricts the power to increase either by fixing it definitely or by words that forbid any further additions to the capital stock, the charter itself would confer the right of increase. This charter has no limitation as to that right, and the privilege is undeniable, perhaps, under the charter. But the words of the exemption are broad, and what we have said of its universality includes any authorized increase of capital stock as well as the rest. The charter has not a word to indicate any such restriction of the exemption, nor anything from which it may be implied, and it seems to me that the constitution cannot affect its force any more than the statute could. If the constitution had expressly ordained that the exemption of the bank should be limited to the amount of the original subscription, or to that which existed when the constitution was passed, unless the charter itself had contained some restriction of the amount of capital stock authorized, it would have been invalid as impairing the obligation of the contract if the right of increase be a charter privilege, as we hold it to be.

Demurrer sustained, and bill dismissed. So ordered.