## City of Marshall v. State Bank of Marshall.

Decided April 7-28, 1910.

**1.—Taxation—State Bank.**

An incorporated State bank is liable to taxation as a corporation only upon the value of its real estate, its personal property being taxable as an element in the value of its shares of stock which the stockholders are to personally render for taxation (Rev. Stats., arts. 5079, 5080).

**2.—Same—Statutes Construed.**

The requirement that State banks, bankers, brokers, etc., render to the assessor lists of money on hand, bills receivable, bonds, stocks, and all other personal or real property (Rev. Stats., art. 5079) does not make all such property subject to taxation as against an incorporated State bank when by the

statute it is also taxable in the form of value of shares of stock against the stockholders personally (Rev. Stats., art. 5080). The two articles are to be construed together. Article 5079 can be given effect as to private bankers, brokers, etc., and as furnishing in the case of incorporated State banks a basis for the valuation of the shares of stock to be rendered by the stockholders personally.

ON MOTION FOR REHEARING.

**3.—Same.**

Where a general provision in a statute is followed by a special one inconsistent with it, there is no irreconcilable conflict; both can be given effect, the latter being treated as creating an exception to the general rule announced by the first.

Appeal from the District Court of Harrison County. Tried below before Hon. W. C. Buford.

*Beard & Davidson,* for appellant.

*F. H. Prendergast,* for appellee.

HODGES, ASSOCIATE JUSTICE.—The appellee is a banking corporation incorporated under the laws of this State, and has its place of business in the city of Marshall in Harrison County. On the 9th of October, 1909, it instituted this suit against the City of Marshall and the members of its board of equalization, seeking a reduction of the assessed value of its personal property and a writ of injunction restraining the collection of the taxes that might be due by virtue of an increased valuation fixed by the board. In substance, the petition is as follows:

That there is an ordinance of the City of Marshall providing that the equalization board shall meet in August of each year and proceed to equalize the assessed values of the property within the city rendered for taxation. The board met in August, 1909, caused the rolls to be brought before them, and, after giving notice to the appellee, concluded to and did raise the assessed values of the property of the appellee, "so far as the bank proper was concerned." There are two other banks in the City of Marshall, the First National Bank and the Marshall National Bank, both of which are federal corporations. When notified, the appellee, by its officers, appeared before the equalization board and insisted that its property should be assessed for taxes at the same proportion of its value as that of the other banks. That notwithstanding this, the board raised the valuation of the appellee's property above the percentage of its market value at which the property of the two other banks was assessed.

It is alleged that the true and legal value of the appellee's property for the purpose of taxation is to be ascertained by adding together its capital stock, surplus and undivided profits; that the board fixed the value of its property at seventy percent of the aggregate of the items mentioned; that it fixed the values of the property of the other two banks, using the same basis at a much lower percentage, one at fifty-two percent and the other at fifty-three and one-half percent of their capital stock, surplus and undivided profits. It is charged

that this was an "unjust, unconstitutional and partial assessment against the State Bank of Marshall; that the said equalization board did not use its best judgment in fixing the taxable value of the property of the three banks, but wrongfully. and purposely assessed the taxable value of the State Bank at a much greater proportion of its cash value than it assessed against the other two banks." All of which, it alleges, is in violation of both the federal and State Constitutions, which require that taxation shall be equal and uniform. It is further alleged that there is a prevailing and established custom and rule in the City of Marshall to render property for taxation at not more than sixty-five percent of its cash market value. When the board had fixed the value of the property of the appellee for taxation the rolls were returned to the assessor for the making up of the general tax rolls, and became conclusive unless appealed from; but no provision is made for an appeal, and the action of the board became final. The petition avers a willingness to pay taxes upon a valuation of fifty-three and one-half percent of its capital stock, surplus and undivided profits, and alleges a tender of that amount.

The appellant excepted generally and specially to the petition, and denied that there was any discrimination in adjusting the assessed values of the property within the city.

The case was tried before the court without a jury on the 19th of November, 1909, and, after overruling the appellant's exceptions, the court made the following order: "And it is therefore ordered, adjudged and decreed by the court that the assessment of the State Bank of Marshall be and the same is reduced from $39,600.00, and now fixed at $30,300.00, and all assessments on value over and above $30,-300.00 is now here set aside and annulled, and the State Bank of Marshall is ordered to pay the taxes due the city on a valuation of $30,300.00 and no more, and the City of Marshall is restrained and enjoined from collecting on any higher valuation for the year 1909. The plaintiff has until February 1, 1910, to pay the tax due by it." It is further provided that the decree shall not in any way affect the assessed value of the real estate assessed against the appellee bank.

The charter of the City of Marshall authorizes the City Commission to create an equalization board and prescribe its duties. Section 287 of the charter provides that property shall be "rendered and listed in the manner prescribed in this charter, and by the general laws in regard to general State taxation, and applicable."

The facts relied on to support the judgment rendered consisted of evidence showing that the appellee bank has a capital stock of $50,000, a surplus of about $6,000, and $1,000 of undivided profits, and that its assessed value had been fixed at $39,600, or about 69 percent of the aggregate of its capital stock, surplus and undivided profits. Taking the same factors as a basis for estimating the value of the holdings of the other two banks, one was assessed at fifty-two percent and the other at fifty-three and one-half percent of their values.

It is apparent from both the pleadings and the evidence that statutory method prescribed for assessing the personal property of banks, consisting of their money, loans, discounts and credits, has not been followed in this instance. Article 5079 of the Revised Civil Statutes,

after prescribing a method of assessment for national banks, provides: "4. All other banks, bankers, brokers or dealers in exchange, or stock jobbers, shall render their list in. the following manner: 1. The amount of money on hand or in transit, or in the hands of other banks, bankers, brokers or others subject to draft, whether the same be in or out of the State. 2. The amount of bills receivable, discounted or purchased, and other credits due or to become due, including accounts receivable, interest accrued but not due, and interest due and unpaid. 3. From the aggregate amount of the items named in the first and second of the last two subdivisions shall be deducted the amount of money on deposit. 4. The amount of bonds and stocks of every kind except United States bonds, and all shares of capital stocks or joint stocks of other companies or corporations held as an investment or in any way representing assets. 5. All other property belonging or appertaining to said bank or business, including both personal property and real estate, shall be listed as other personal property and real estate." (Acts 1895, p. 37.) Article 5080 provides for the rendition of the real estate owned by banks and bankers, and requires the president, or some other officer of the bank, at the time of making the rendition, to file with the assessor a sworn statement showing the number and amount of the shares of stock of the bank, the name and residence of each shareholder, and the number and amount of shares owned by him. It then requires each shareholder to render at their actual value to the assessor of taxes all shares owned by him in such bank, and says: "Each share in such bank shall be taxed only for the difference between its actual cash value and the proportionate amount per share at which its real estate is assessed." In this manner the statute seeks to reach this class of personal property for the purpose of taxation. We have been referred to no provision of the ordinances of the City of Marshall, or of the charter, which requires a different method of assessing the property of banks for city purposes, and shall therefore conclude, in view of the provision hereinbefore referred to, that the city has adopted, in so far as they are applicable, the provisions set forth in the articles of the statute which we have just quoted. The bank as a corporate institution is not liable for any taxes except those assessed against its real estate. First National Bank v. City of Lampasas, 33 Texas Civ. App., 530, 78. S. W., 42; Engleke v. Schlenker, 75 Texas, 559, 12 S. W., 999. An assessment such as is here shown to have been made against the appellee can not form the basis of an action to enforce the collection of any taxes on the property involved, for the reason that the law has imposed no such liability. We think the language used by Justice Key in the case first above referred to is especially applicable here. It is true that in that case a national bank was the complaining party; but the law with reference to the assessment of personal property owned by State banks and bankers is not so materially different from that providing for the assessment and collection of taxes on the property of national banks as to make the force of his holding inapplicable to the present situation.

While we do not concur in the particular form of the judgment rendered in this case in the court below, still we think the correct re-

sult was attained. It is not a judgment of which the city can complain. If the appellee bank was not liable for any taxes upon this property, clearly it was not liable for the taxes upon the increased valuation added by the board of equalization. It is asking no relief against the collection of the taxes due upon the valuation at which the property was originally and voluntarily rendered by it, but, on the contrary, offers to pay that amount. Hence, we are not called upon to exempt it from that which it now voluntarily offers to pay. We do not undertake to say whether or not the payment of the taxes tendered by the appellee upon the original assessment would exempt its shareholders from their statutory liability for the taxes due on their shares of stock, or would justify the bank in the future in paying dividends to such holders while they remained in that delinquent attitude. These questions are not before us. For the reasons stated the judgment of the District Court will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

In their motion for a rehearing counsel for appellant insist that we were in error in holding that the personal property of a State banking corporation is not assessable against it, and that the assessment against the appellee in this instance was void and unenforcible. In support of that contention we are referred to article 5079 of the Revised Statutes and to the cases of Gillespie v. Gaston, 67 Texas, 579, 4 S. W., 248, and Griffin v. Heard, 78 Texas, 607, 14 S. W., 892. In the first paragraph article 5079 uses this language: "Every bank, whether of issue or deposit, banker, dealer in exchange or stock jobber shall, at the time fixed by this chapter for listing personal property, make out and furnish the assessor of taxes a sworn statement showing"—then follow requirements relating exclusively to national banks, after which comes the language quoted in the original opinion as referring to other banks and bankers, which it is claimed includes within its terms all State banks and bankers, whether incorporated or not. Article 5079 was originally article 4684 of the Revised Statutes of 1879. In 1883 this latter article was by an amendment enacted in its present form, except that it contained language exempting United States treasury notes from the amount of money on hand which State banks and bankers were required to list. Acts 1883, p. 111; 9 Gammel's Laws of Texas, 417. In 1895 there was another amendment of this article, the only modification made being to exclude the exemption in favor of United States treasury notes. Acts 1883, p. 37; 10 Gammel's Laws of Texas, 767. An examination of the caption and emergency clause of the Act of 1883 leaves little room to doubt that the Legislature then designed that law as prescribing a means for taxing the property, personal and real, of both State and national banks, so far as this could be done without conflicting with the laws of the United States. Property owned by State banks and bankers could be taxed directly in the hands of the individual or corporate owners, while that of national banks could be reached only by taxing the shares of stock in the hands of the holders. Section 5219, U. S. Stat. at Large; 5 Fed. Stat. Ann., 157. In 1885, what now appears

as article 5080 of the present Revised Statutes was enacted. That article is as follows: "Every banking corporation, State or national, doing business in this State shall, in the city or town in which it is located, render its real estate to the assessor of taxes at the time and in the manner required of individuals. At the time of making such rendition the president or some other officer of said bank shall file with said assessor a sworn statement showing the number and amount of the shares of said bank, the name and residence of each shareholder, and the number and amount of shares owned by him. Every shareholder of said bank shall, in the city or town where said bank is located, render at their actual value to the assessor of taxes all shares owned by him in such bank; and in case of his failure so to do, the assessor shall assess such unrendered shares as other unrendered property. Each share in such bank shall be taxed only for the difference between its actual cash value and the proportionate amount per share at which its real estate is assessed. The taxes due upon the shares of banking corporations shall be a lien thereon, and no banking corporation shall pay any dividend to any shareholder who is in default in the payment of taxes due on his shares; nor shall any banking corporation permit the transfer upon its books of any share, the owner of which is in default in the payment of his taxes upon the same. Nothing herein shall be so construed as to tax national or state banks, or the shareholders thereof, at a greater rate than is assessed against other moneyed capital in the hands of individuals." Acts 1885, p. 106; 9 Gammel's Laws of Texas, 726. In adopting the revision of 1895 the Acts of 1883 and 1885, to which we have alluded, appeared consecutively as articles 5079 and 5080. This evidently indicated a legislative intent that both should stand and be given effect. The question then is, Can this be done? Article 5079 requires all banks, bankers, brokers, dealers in exchange or stock jobbers to make out and furnish to the assessor the list of property and credits mentioned in the subsequent portions of the article. The fifth and final paragraph provides that all other property of the bank or business, both personal and real, shall be listed as other personal and real property. This article is broad enough to include within its terms an individual or partnership, as well as a corporation, engaged in the banking or stock-jobbing business. It may also include joint stock companies and others engaged in doing an exchange or brokerage business. Article 5080 relates exclusively to "every banking corporation, State or national." We can not construe article 5079 as a method for assessing the property held by State banking corporations without suspending or annulling some of the provisions of article 5080, or holding that the Legislature intended to tax both the property of the bank and its shares of stock in the hands of the stockholders also. This would be double taxation, and would be attributing to the Legislature an intent which would render one or the other of the two articles void. Gillespie v. Gaston, supra. The proper construction, we think, would be to hold that, in adopting the Act of 1885 (article 5080), the Legislature intended thereby to provide a special and uniform method for taxing the personal property represented by the bank's holding to be

made applicable to both State and national corporate institutions. The concluding sentence of the above article provides that "nothing herein shall be so construed as to tax national or state banks, or the shareholders thereof, at a greater rate than is assessed against other moneyed capital in the hands of individuals." This is practically a literal copy of that portion of the federal statute which gives the right and fixes the conditions upon which the property held by national banks may be subjected to State taxation. The words "moneyed capital" there used have been held to refer to capital which comes into competition with that owned and held by national banks. National Bank of Wellington v. Chapman, 173 U. S., 205, 43 L. ed., 669. In view of this holding by the Supreme Court of the United States, there would be a strong reason why the Legislature should undertake the adoption of a method which would guarantee perfect uniformity in the taxation of the property represented by the holdings of national banks and that of similar corporations doing business by virtue of State law. We must assume that in the enactment of article 5080 the Legislature had a definite purpose in view and intended that all of its provisions should be enforced. Those provisions relating to the taxation of the shares of stock of incorporated State banks can not be enforced as a method of taxation if it be held that the personal property of such institutions is subject to taxation against the corporation itself. We can not attribute to the Legislature the intent to have two inconsistent statutes enforced; nor should we treat one as repealing the other by implication, unless the inconsistency results from the only reasonable construction that can be placed upon them. There are in this State single individuals and associations of persons engaged in the classes of business referred to in article 5079, to which it may apply. The requirements as to the detailed lists to be furnished may also prove serviceable to assessors and equalization boards in arriving at the proper valuation of shares of stock in incorporated banks. By giving full effect to the provisions of article 5080 it operates only to except incorporated State banks from the provisions of article 5079, in so far as that article may be relied on as a basis of assessing the personal property of such banks. Article 5079 is general in its scope, while article 5080 is special. In such cases there is no irreconcilable conflict; the courts universally give effect to both by construing one as an exception from the general terms of the other. 1 Sutherland on Stat. Const., sec. 267; Garrison v. Richards, 107 S. W., 861, and cases there cited; Perez v. Perez, 59 Texas, 322. In the last case above cited the court said: "The general rule is that when the law makes a general provision apparently for all cases, and a special provision for a particular class, the general must yield to the special class so far as the particular class is concerned." We also refer to 2 Sutherland on Stat. Const., sec. 370. Adopting this construction of the two articles of the statute to which we have referred, we think it is clearly apparent that the Legislature intended by article 5080 to provide a means of taxing the personal property of State banking corporations in the hands of the shareholders. It follows from this that such corporations are not now required to render their personal property for taxation. If they are not required to render for taxation,

then it also follows that they can not be compelled to pay taxes. If these conclusions are correct, the appellee had the right to resist the compulsory collection of any taxes which the law did not authorize to be levied against it. It may not be improper to say in this connection that if the appellee were subject to taxation under the provisions of article 5079, under the pleadings and facts as shown in the record it has failed to show any right to the injunction granted. We predicate our affirmance of the case exclusively upon the ground that the appellee can not be required to pay *any* taxes except upon its real estate.

Appellant relies upon the case of Gillespie v. Gaston as justifying a conclusion contrary to that which we here reach. It appears from a reading of the opinion in that case that the court held that State banking corporations were subject to be taxed under the provisions of article 5079 at the time the assessment there involved was made. It also appears from the concluding sentence of the court's opinion that the present article 5080 was not in force at the time that assessment had been made. Our conclusion is that the court based its adjudication entirely upon the status of the law prior to the enactment of article 5080. The case of Griffin v. Heard we do not think is opposed to our conclusions. In that case the parties who were seeking the relief from the payment of the taxes composed a partnership, and were clearly subject to the provisions of article 5079.

For the reasons discussed we have concluded to adhere to our original opinion, and the motion for a rehearing is overruled.

*Affirmed.*

Writ of error refused.