## J. F. EYLAR v. F. W. READ ET AL.

(Case No. 4657.)

1. APPROPRIATION OF PAYMENTS.— If a creditor having several debts against a debtor receive money with instructions to appropriate it to one of them, it must be thus appropriated, and its appropriation being once thus directed, cannot be afterwards changed by the creditor without the debtor's assent.

2. SAME.— The mere execution and delivery after payment of a receipt, showing the appropriation of the payment otherwise than as directed when payment was made, imposes no obligation on the debtor to have the receipt corrected, and works no estoppel on the debtor's right to enforce the appropriation of the payment in the manner first directed by him.

APPEAL from Navarro. Tried below before the Hon. L. D. Bradley.

*R. C. Beale*, for appellants, cited: Hartwell v. Jackson, 7 Tex., 581; Cravens v. Booth, 8 Tex., 249; O'Brien v. Hilburn, 9 Tex., 299; Chubb v. Johnson, 11 Tex., 477; Allen v. Urquhart, 19 Tex., 481; Dunham v. Chatham, 21 Tex., 244, 607; Baily v. Trammell, 27 Tex., 327; Page v. Arnim, 29 Tex., 69; Fitzgerald v. Turner, 43 Tex., 82, 192; Gatling v. Rodman, 6 Ind., 289; Drake v. Glover, 30 Ala., 382; McIntosh v. Smith, 2 La. An., 756; Glidden v. Strippler, 52 Pa., 400; Wicks v. Fitzpatrick, 1 Humph., 400; Kerr on Fraud & Mistake, pp. 149, 150.

*Read & Read* and *Frost, Barry & Lee*, for appellees, cited: Page v. Arnim, 29 Tex., 53; Burleson v. Burleson, 28 Tex., 383; Scoby v. Sweatt, 28 Tex., 713; Barnett v. Pool, 23 Tex., 520; Love v. Barber, 17 Tex., 312; O'Brien v. Hilburn, 9 Tex., 299; Ryan v. Maxey, 43 Tex., 192.

STAYTON, ASSOCIATE JUSTICE.— O. A. Eylar, being the holder of several notes executed by J. F. Eylar, one of which was secured by a valid deed of trust upon his homestead, caused the trustee to advertise the property for sale. This suit was brought to enjoin the sale, upon the ground that the debt secured by the trust deed had been paid. The injunction was dissolved, but the bill was not dismissed. After the injunction was dissolved the court required the defendant with sureties to execute in accordance with the statute a refunding bond. This was done, and the property was sold by the trustee pending the suit.

It was not denied that certain moneys had been paid by the plaintiffs to the defendant, but it was claimed by the plaintiffs that

at the time the money was paid it was directed to be appropriated upon the note secured by deed of trust upon their homestead, while the defendant claimed that he had properly appropriated it in partial liquidation of the other notes which he held.

The testimony of both of the plaintiffs went directly and unequivocally to prove that they directed the money at the time it was paid to be applied in payment of the note secured by trust deed. The testimony of the defendant tends to negative any such direction. The largest payment seems to have been made about the 18th of January, 1877, and the suit to enjoin the sale of the homestead was instituted on December 29, 1879.

Some time after the money was paid, O. A. Eylar executed a receipt for it, which was as follows:

"CORSICANA, Texas, January 18, 1877.

"Received of J. F. Eylar the sum of ($205) two hundred and five dollars, which I have credited on general account. This is in receipt for all moneys received up to this date, January 18, 1877.

"OLIVER A. EYLAR."

A part of the money paid seems to have been the separate property of the wife of J. F. Eylar. Some time after the receipt was given, it was read by Eylar and wife, and to that part of it which recited that the money was paid on general account they both objected, but it does not appear that they made their objection known to the defendant, nor that they ever called the attention of the defendant to the form of the receipt which he had given.

The defendant in his own testimony did not deny that he was directed to appropriate the money as claimed by the plaintiffs at the time he received it, but states that some time after the money was paid, J. F. Eylar told him his wife insisted that the money should be appropriated in discharge of the debt secured by lien upon the homestead, to which the defendant says he objected, and that thereupon J. F. Eylar told him to appropriate the money as he pleased.

The cause was tried without a jury, and the court did not pass upon the question whether the plaintiffs, at the time the money was paid, requested it to be appropriated to the payment of the debt which was secured by lien upon the homestead; nor did the court pass upon the question whether, if such direction was given at the time the money was paid, J. F. Eylar subsequently authorized it to be otherwise appropriated.

The court, however, held that Mrs. Eylar, having seen the receipt given to her husband of date January 18, 1877, and having taken no steps to have the same canceled or changed until the filing of

the suit, and that she, not having notified O. A. Eylar of her objection to the receipt, had acquiesced in the appropriation of the payment and was estopped to set up claim to the contrary.

The rule in reference to the appropriation of payments is that the debtor may designate to what particular debt a payment shall be applied, where he owes more than one distinct debt to the creditor, and that such designation precludes the creditor from otherwise appropriating it. Proctor *v.* Marshall, 18 Tex., 66; Taylor *v.* Coleman, 20 Tex., 776. And, it seems, if a creditor receives money with direction to appropriate it on a named debt, it must go to the specified debt, no matter what the creditor may say at the time, and that an appropriation once designated cannot be changed by the creditor without the debtor's assent. Wharton on Contracts, 923; Levystein *et al. v.* Whitman *et al.*, 59 Ala., 345; Reed *v.* Boardman, 20 Pick., 443; Benjamin on Sales, 746.

If Eylar and wife paid money to O. A. Eylar and directed him to appropriate it to the payment of the debt which had a lien upon their homestead, the simple fact that he may have subsequently given them a receipt which declared the money was received on "general account," or even upon some other named debt, would not make it incumbent upon the debtor, nor upon his wife, to take any steps to have the receipt changed, or in default of such action be precluded from insisting that the money should be appropriated as they had directed it to be.

Their silence after they had once spoken, and directed, as the law authorized them to do, that the money should be appropriated in a certain way, could not confer upon the creditor any right to divert it; nothing less than the consent of the debtor can confer such right after he has once directed to what debt the money shall be applied.

In the absence of such consent, if the creditor applies the money to a different debt to that which he is directed to apply it at the time the money is paid, he does so in his own wrong, and from such act no estoppel can result in his favor from the silence of the debtor.

Having once received the debtor's instructions, which fix his rights, it is his duty to obey them; and if, failing to do so, he attempts to apply the money to another debt, he cannot complain if the law compels him properly to apply it, even though thereby he loses the debt to which he attempted to apply it, by the same becoming barred by the statute of limitation.

Under the evidence, there were two issues of fact upon which the rights of the parties depended: 1st. Did J. F. Eylar and wife, when

they paid the money, direct it to be appropriated on the debt secured by lien upon their homestead? If this be answered in the affirmative, then the right of the plaintiffs was established as claimed by them, unless the second issue was found against them. 2d. If Eylar and wife directed the money to be appropriated to the lien debt, did Eylar afterwards agree that the creditor should apply it to another debt? If so, then the creditor might so appropriate it, unless the money or a part of it was the separate property of the wife and this fact was known to the creditor.

As neither of these questions of fact was passed upon by the court, we deem it more likely to subserve the ends of justice to reverse the judgment and remand the case, than upon the record before us to reverse and here render and it will be accordingly so ordered.

REVERSED AND REMANDED.

[Opinion delivered November 27, 1883.]