T. H. GRIFFIN, TAX COLLECTOR, v. HEARD, ALLEN & FLOORE.

No. 7582.

1. **Tax Assessment by Bank—Amount of Money on Deposit.**—By "the amount of money on deposit" authorized to be deducted from the gross amount of money and credits in the rendition for tax assessment (provided in article 4684, Revised Statutes, section 4 and subdivision 3) is meant the amount due depositors. That is to say, the debts of the bank due depositors, and not money belonging to others and held by the bank as bailee.

2. **Taxation of Money and Credits.**—The effect of articles 4669, 4670, 4671,

4672, and 4673, Revised Statutes (Sayles' edition), is to subject to taxation, in addition to tangible property, all moneys actually belonging to the tax payer and any excess that may exist of his credits over his indebtedness.

3. **Rendition of Credits and Money in Assessment.**—The object of amended article 4684 (Sayles' edition Revised Statutes) is not to define the property of banks and bankers subject to taxation, but merely to secure a faithful rendition of their assets. It is additional to the provisions in article 4681, Revised Statutes, which apply to banks and bankers as to all other tax payers.

4. **Money on Deposit in Banks.** — In a banking business proper the sum due depositors represents the bank's indebtedness, and in order to make the tax upon the credits of a bank equal to and uniform with the tax upon the credits of other persons it is necessary that all its debts should be deducted.

5. **Treasury Notes in Hands of Other Banks.**—If a bank has to its credit by another bank an amount of money, although made up of United States treasury notes, subject to draft, as is the usual course of dealing between bankers, such money would not be treasury notes in the hands of such other banks, but merely credits to that amount, subject to taxation as other credits.

6. **United States Treasury Notes.**—The words "except United States treasury notes" in amended article 4684, refer to "money on hand or in transit," and not to "money in the hands of other banks, bankers, or brokers, or others subject to draft."

7. **Injunction Restraining Collection of Taxes.**—The burden of proving the ground of relief is upon the plaintiffs; and the plaintiffs testifying that they had treasury notes on deposit in other banks, should have gone further and stated whether the money was a general or special deposit, and if special how they knew the fact. In absence of testimony that the deposit of United States treasury notes in other banks was a special deposit it was taxable.

8. **United States Treasury Notes Accumulated.** — A bank may accumulate United States treasury notes paid over its counter and such sum be exempt from taxation; otherwise if the treasury notes had been procured for the special purpose of avoiding taxation by the exchange of taxable money or property.

9. **Practice in Submitting Special Issues.**—When special issues are submitted to the jury care should be taken to make them specific. See example of mixed questions defective.

APPEAL from Somervell. Tried below before Hon. C. K. Bell. The opinion gives a statement of the case.

*Crane & Ramsey* and *English & Ewing,* for appellant.— 1. The court erred in refusing to instruct the jury in effect, as requested by the defendant, that the burden of proof in this case is on the plaintiffs, and unless they have shown by a preponderance of the evidence that the plaintiffs did not have on hand or own on the 1st days of January, 1887 and 1888, the taxable moneys and credits assessed against them on those dates as their property, to-wit, the sum of $46,976, then you will find for the defendant, because such is the law of this case. Brown v. Johnson, 29 Texas, 40; Railway v. Hart, Ct. App. C. C., sec. 421; Story on Bills, sec. 410; 1 Desty on Tax., p. 71.

2. The jury having found that the plaintiffs owned on the 1st days of January, 1887 and 1888, more taxable money and credits than was assessed against them, and having failed to find that they had any money

on deposit on either of these dates, a judgment for defendant should have been entered by the court. Rev. Stats., arts. 4672, 4684; New Orleans v. Bank, 29 La. Ann., 851; Bank v. New Orleans, 9 Otto, 97; Jones v. Seward County, 4 N. W. Rep., 951.

3. The jury having found that the evidence failed to show how much of the treasury notes claimed by plaintiffs to have been owned by them on the 1st days of January, 1887 and 1888, was derived from deposits, and the evidence showing that many of them were derived from that source, they (the treasury notes on hand) should have been used to liquidate the debts due depositors, and the remainder of the debts due depositors should have been deducted from the amount of taxable property owned by them on said date. The result would have been to show that plaintiffs owed a large amount of taxes which they had failed to pay at the date of trial.

4. A verdict supported by testimony as to existing facts which could not, from the very nature of things, be within the knowledge of the witnesses giving such testimony ought not to be permitted to stand.

5. For a bank to receive treasury notes in due course of business from depositors and other sources, and retain them, paying out taxable money for the purpose of ridding themselves of the taxable money, having the treasury notes on hand on the 1st day of January to avoid taxation, is a fraudulent acquisition of treasury notes for the purpose of avoiding taxation, and the treasury notes so acquired are not exempt. Bank v. New Orleans, 29 La. Ann., 851; Bank v. New Orleans, 9 Otto, 97; Jones v. Seward County, 4 N. W. Rep., 951; Cool. on Tax., 226 (note), 417; Mitchell v. United States, 91 U. S., 206; Dixon v. Halstead, 37 N. W. Rep., 621; 1 Desty on Tax., p. 71; Shotwell v. Moon, 16 N. E. Rep., 474.

*Poindexter & Padelford,* for appellees.— 1. While it is a rule of law that the burden of proof is upon the party alleging the affirmative of an issue, it is not always necessary and proper to give it in charge to the jury. In this case it would have been error for the court to have given said charge, claimed to have been asked by appellant, for the reason that same places upon appellees the burden of proof as to all of the issues raised in this case both by plaintiffs and defendant, and requires plaintiffs to disprove the defenses set up in defendant's pleadings. Blum v. Strong, 71 Texas, 321.

2. When language is plain and unambiguous there is no room for construction; it is not allowable to interpret that which needs no interpretation. It is a well established principle of law, coming from the earliest times down to the present, that the office of the court is *jus dicere,* not *jus dare;* that the courts are not to mould the language of statutes in order to meet an alleged convenience or an alleged equity; are not to be influenced by any notions of hardships or of what in their view is right and reasonable or is prejudicial to society; are not to alter clear words, though the Legislature may not have contemplated the consequences of using

them; are not to tamper with words for the purpose of giving them a construction which is supposed to be more consonant with justice than their ordinary meaning. A court can not add to or subtract from the plain meaning of a statute by subtle and far fetched constructions. Laws 18th Leg., ch. 108, p. 112; Land Commrs. v. Weede, Dallam, 361; Engelking v. Van Wamel, 26 Texas, 469; De Leon v. Owen, 3 Texas, 153; Stapp v. The State, 3 Texas Ct. App., 138; 2 Vatt. Law of Nations, sec. 263; Wilberf. Stat. Law, p. 116; End. Inter. Stats., secs. 4–7; Depley v. The State, 58 Am. Dec., 628; Gains v. Gains, 12 Am. Dec., 377; Winter v. Jones, 54 Am. Dec., 385; Salling v. McKinney, 19 Am. Dec., 724; Coffin v. Rich, 71 Am. Dec., 563; United States v. Hartwell, 6 Wall., 395; McCluskey v. Cromwell, 11 N. Y., 601; Newell v. The People, 7 N. Y., 97; Bidwell v. Whitaker, 1 Mich., 469; Leoni v. Taylor, 20 Mich., 154; Johnson v. Rybo, 49 N. Y., 462; Hyatt v. Taylor, 42 N. Y., 261; Benton v. Wickwire, 54 N. Y., 228; Tynan v. Walker, 35 Cal., 634; Bent v. Hubbardson, 138 Mass., 99; Baker v. Bank, 9 Met., 197; Gore v. Braezier, 3 Mass., 538; Langdon v. Potter, 3 Mass., 221; Douglas v. Freeholders, 38 N. Y., 214; Railway v. Commrs., 18 N. J. L., 71; Eucking v. Simmons, 28 Wis., 276.

3. The rule of construction set forth in above proposition is applied to all statutes, remedial as well as penal; and more especially should it be applied to the statute imposing duties and taxes, for such acts are not to be extended by construction beyond the clear import of the words used, nor are their scope to be enlarged by legal fiction so as to include matters not within same, nor are exceptions and limitations not within the language of the statute to be engrafted thereon by such legal fiction and judicial legislation under the guise of interpretation. United States v. Watts, 1 Bond, 580; Davy v. Morgan, 56 Barb., 218; Crosby v. Brown, 60 Barb., 548; Houghton v. Auditor-General, 41 Mich., 28; 1 Desty on Tax., p. 102.

4. The phrase "money on deposit," when applied to banking and banks, has a definite and generally accepted meaning and signification. It means and signifies a general or ordinary deposit. An ordinary or general deposit with a bank creates, as between the bank and the depositor, simply the relation of debtor and creditor. The identical money deposited is not to be returned to the depositor, but only its equivalent on demand. The property in the money deposited passes to and vests in the bank and the bank becomes obligated to pay to the depositor on demand the amount of the deposit. Baker v. Kennedy, 53 Texas, 200; Bank v. Risley, 111 U. S., 126; Bank v. Bank, 2 Wall., 256; Newm. on Deposits, pp. 13 (sec. 12), 10, 11 (sec. 10), 106 (sec. 105); Curtis v. Leavit, 15 N. Y., 166; Paine v. Gardner, 29 N. Y., 167; San Francisco v. Lux, 64 Cal., 481–485; Foley v. Hill, 2 H. of L. Cases, 28.

5. United States treasury notes are exempt from taxation under the laws of the United States and of this State, being Federal agencies; and this exemption enures to the benefit of the person who is the owner and

holder of these notes on the 1st day of January of any particular year. Laws 18th Leg., ch. 108, p. 112; Rosenberg v. Weekes, 67 Texas, 578; Bank v. Supervisors, 7 Wall., 28; Cool. on Tax., pp. 83–85.

6.    There is a clear and broad difference and distinction between the retention and reservation of property which is exempt from taxation, when the same is obtained in the usual and ordinary course of business and trade, and the temporary conversion of taxable property into that which is exempt for the purpose of evading taxation.    In the first instance such property so retained and reserved can not be subjected to taxation; in the second instance, under certain circumstances, it has been.    2 Sayles' Civ. Stats., art. 4684, sec. 4.

7.    In law a person has a right to exchange taxable property for that which is exempt from taxation for the purpose of evading taxation, and it is no concern of others or even of the State, which by its laws allows the choice, whatever may be the motive on which he acts; for in law such exempt property can not be taxed, though a court of equity upon equitable principles may refuse to lend its equitable powers to assist a person thus to evade taxation.    Cool. on Tax., pp. 415, 416; Stillwell v. Corwin, 55 Ind., 433; People v. Ryan, 88 N. Y., 142; Bank v. Burlington, 54 Ia., 609.

GAINES, ASSOCIATE JUSTICE.—The appellees, a partnership engaged in the business of banking at Cleburne, in Johnson County, brought this suit against appellant, as the tax collector of that county, to enjoin the collection of certain taxes.    The action was instituted in Johnson County but the venue was changed to Somervell.    The cause was submitted to a jury upon special issues, and the court rendered a judgment in favor of the plaintiffs upon the verdict.

The plaintiffs rendered statements of the assets of their banking business for taxation for the years 1887 and 1888 in the form required by the Act of April 14, 1883, but neither statement showed either money or credits subject to taxation.    The assessor, being dissatisfied therewith, assessed them upon the sum of $46,976, consisting of money and credits for each year.    The taxes so assessed they sought to enjoin by this action.

It was agreed between the counsel for the respective parties that the only questions to be determined were:

" 1.    Did plaintiffs, composing the firm of Heard, Allen & Floore, and operating a private bank in Cleburne, Texas, known as the ' Bank of Cleburne,' own, hold, and have the $46,976 assessed against said firm on the 1st day of January, 1887, and on the 1st day of January, 1888, as money and credits subject to assessment and taxation in Johnson County, Texas, for said years under the law passed by the Legislature of this State April 14, 1883, for the assessment of private banks, etc. ?

" 2.    If plaintiffs did not have said amount of money and credits on said

dates, then how much did they so have on said dates subject to asessment and taxation as aforesaid?

"3.   If plaintiffs can not be held liable for such tax as may be due upon such moneys and credits under the law under which said firm was assessed, then can they be held under any other law for said taxes?

"4.   Neither party shall be required to introduce any testimony except such evidence as may tend to prove or disprove the questions of fact involved in the above stated questions."

The testimony of the members of the banking firm was introduced upon the trial, and was substantially as follows:

That the firm had on January 1, 1887, money on hand, in transit, and in the hands of other bankers, except United States treasury notes, $8673; that they had credits, $89,815; that the amount of money on deposit with them was $112,030.

They also testified that on the date above mentioned they had in their bank vaults $36,322.71, and $40,492 in other banks, making together $76,814.71, but that $68,141 of this amount was in treasury notes which had been accumulated by them during a course of business extending over four years.

They also testified, in effect, that they had on January 1, 1888, cash in vaults $42,431, and $7322 in other banks, making the sum of $49,753, and that of this sum $42,003 were treasury notes; that at this date their credits amounted to $55,971, and that the amount of money on deposit with them was $69,671.

There are two prominent questions in the cause, and they involve the construction of the provisions of the act of the Legislature above mentioned.   That statute was enacted as amended article 4684 of the Revised Statutes, and the fourth subdivision reads as follows:

"4.   All other banks, bankers, brokers, or dealers in exchange, or stock jobbers shall render their lists in the following manner:  (1) The amount of money on hand or in transit, or in the hands of other banks, bankers, brokers, or others subject to draft, whether the same be in or out of the State (except United States treasury notes);  (2) the amount of bills received, discounted, or purchased, and other credits due or to become due, including accounts receivable, interest accrued but not due, and interest due and unpaid;  (3) from the aggregate amount of the items named in the first and second of the last two subdivisions shall be deducted the amount of money on deposit;  (4) the amount of bonds and stocks of every kind (except United States bonds), and all shares of capital stocks or joint stocks of other companies or corporations held as an investment or in any way representing assets;  (5) all other property belonging or appertaining to said bank or business, including both personal property and real estate, shall be listed as other personal property and real estate."

We understand the main contention of appellant to be that since the

appellees are entitled to deduct from the money on hand all nontaxable United States treasury notes, all treasury notes placed in bank by their depositors should be subtracted from the amount of their deposits before subtracting the latter from the sum of their cash and credits, and that having the burden of proof and having failed to show the amount of treasury notes that had contributed to swell the deposits, nothing should have been deducted for money on deposit. In this construction of the statute we do not concur. We are of opinion that by "the amount of money on deposit," as those words are used in the third subdivision of the act we have quoted, is meant the amount due depositors—that is to say, the debts of the bank due depositors, and not money belonging to others and held by the bank as bailees. Money on special deposit is not the property of the bank, but belongs to the depositors and is subject to be assessed to them for taxation. On the other hand, an ordinary deposit in bank creates the relation of debtor and creditor, and the effect of the transaction is to transfer the property in the funds deposited to the bank and to render it liable to taxation as the money of the banker.

Now it must be borne in mind that articles 4669, 4670, 4671, 4672, and 4673 of the Revised Statutes define the property in the State which is made subject to taxation. Article 4669 declares that "All property, real, personal, and mixed, except such as may be hereinafter expressly exempted, is subject to taxation, and the same shall be rendered and listed as herein prescribed." Article 4673 declares what property shall be exempt. Article 4671, among other things, provides that "Personal property shall for the purposes of taxation be construed to include all goods, chattels, and effects, and all moneys, credits, bonds, and other evidences of debt owned by citizens of the State, whether the same be in or out of the State; * * * all moneys at interest, either within or without the State, due the person to be taxed over and above what he pays interest for, and all other debts due such persons over and above their indebtedness," etc. Article 4672 declares that "The term money or moneys wherever used in this title shall besides money or moneys include every deposit which any person owning the same or holding in trust and residing in this State is entitled to withdraw in money on demand," and that "the term credits wherever used in this title shall be held to mean and include every claim and demand for money or other valuable thing, and every annuity or sum of money receivable at stated periods due or to become due, and all claims and demands secured by deed or mortgage due or to become due." The effect of these provisions is simply to subject to taxation, in addition to tangible property, all moneys actually belonging to the tax payer and any excess that may exist of his credits over his indebtedness.

The object of article 4684 is not to define the property of banks and bankers subject to taxation, but merely to secure a faithful rendition of their assets, to the end that they may not escape the equal and uniform

taxation required by the Constitution. The statement therein provided for is in fact not the sole statement required of bankers, brokers, and stock jobbers, for it is evidently contemplated that they shall in the first instance list all their assets for taxation under article 4681 in the same manner that all other persons are required to render their property. This is shown, we think, by the following extracts from the enumeration of the classes of property to be rendered. That enumeration includes the following:

"36. Amount of money of banker, broker, or stock jobber.

"37. Amount of credits of banker, broker, or stock jobber.

"38. Amount of money other than of banker, broker, or stock jobber.

"39. Amount of credits other than of banker, broker, or stock jobber."

This shows that all bankers in rendering their general list of real and personal property were required to render their money as others were required to render such assets, except that they were to be listed as the money and credits of a banker and credits subject to taxation. Article 4684 required a more specific statement, so that the law would not be evaded. It is apparent, therefore, that the object of the statement required by that article (now amended by the Act of April 14, 1883) was simply to ascertain their taxable money and credits, to the end that they should be taxed just as other persons are taxed. It does not declare the personal property subject to taxation. That is done by article 4671, previously quoted, from which it follows that the act under consideration is to be construed in the light of that article.

Amended article 4684 expressly provides that from the aggregate amount of money, etc., and of credits "shall be deducted the amount of money on deposit." We think this means no more nor less than that all the money due depositors shall be deducted. In a banking business proper the sum due depositors represents the bank's indebtedness, and in order to make the tax upon the credits of a banker equal to and uniform with the tax upon the credits of other persons it is necessary that all these debts should be deducted.

The case of New Orleans v. Canal and Banking Company, 29 Louisiana Annual, 85 (same case, 99 United States, 97), relied upon by appellant, evidently involved the construction of a statute which provided a different method of ascertaining the capital of a bank for taxation, and the rule there announced is not applicable to the case before us. We conclude that in estimating the appellees' credits for taxation it was proper to deduct the whole amount of their deposits.

But appellant also insists that the court should have granted a new trial because the evidence was not sufficient to support the finding of the jury as to the amount of treasury notes appellees had on the 1st day of January, 1887, and the amount on hand on the 1st day of January, 1888. We concur in the proposition that for the reason stated a new trial should have been granted. Let us recur to their testimony as to their money on

hand and in bank on the 1st day of January, 1887. It was to the effect that on that date they had in cash in their vaults $36,322.71 and $40,492 in other banks, and that of this amount $68,141 was in treasury notes. One of the plaintiffs deposed, "the said firm had on hand and in other banks January 1, 1887, the sum of $68,141 in United States treasury notes, which had been acquired by said firm in the usual and regular course of business during a period of about four years." How a firm doing a banking business on a capital of $60,000 could afford during a period of four years to accumulate $40,492 as a special deposit in any particular kind of currency, we confess we do not understand; or for what purpose it could be so accumulated, except it be to evade taxation, we are unable to perceive. Therefore we do not think the witness meant that his firm had on hand this amount on special deposit. If the $40,492 in other banks on the 1st of January, 1887, was placed there to the credit of appellees subject to draft, as we know is the usual course of dealing between bankers, then they had no treasury notes in the hands of other banks, but merely credits to that amount, subject to taxation as other credits. This sum represented the amount of their deposits in other banks, for which they were chargeable for the purpose of taxation, just as they were entitled to be credited with the sums that others had deposited with them. The words "except United States treasury notes" found in amended article 4684 (hereinbefore quoted) evidently refer to "money on hand or in transit" and not to "money in the hands of other banks, bankers, or brokers, or others subject to draft." Money placed by one banker with another subject to draft creates the relation of debtor and creditor, and can no longer be treasury notes belonging to the depositor, even though the deposit had been made in that currency. It is absurd to presume that the Legislature intended that the credit should follow the nature of the fund deposited. The legislation we have had under consideration was not intended to favor banks, but to prevent their evading the payment of their just proportion of the taxes imposed upon the property of the people.

The appellees sought the aid of the equitable powers of the court to enjoin the payment of their taxes, and the burden was upon them to make out their case. They should not succeed without making a full and fair disclosure as to their assets. They were the only witnesses examined in the case, and should have testified whether their "money in the hands of other banks" was on general or special deposit, and if on special deposit how they know the fact that it was in United States treasury notes. Having failed to do this, the presumption is that the $40,492 testified to was on general deposit, and subject to taxation without reduction except for indebtedness owed by them.

The testimony heretofore detailed in the statement of the case shows a similar state of assets on January 1, 1888, and it need not be here repeated or discussed.

Appellant also claims that the accumulation of United States treasury notes in the vault of the bank·was for the purpose of evading taxation, and therefore they should not be exempted. But we do not think the testimony shows a case of evasion. The witnesses testified that the exigencies of their business required them to keep on hand a large reserve fund, which they had accumulated during a series of years by retaining treasury notes paid over the counter in the usual course of business and by paying out other money. This we do not think an evasion of the tax laws as recognized in the cases in which it has been held that treasury notes under the circumstances were not exempt. If the treasury notes had been procured for the special purpose by the exchange of taxable money or property the case would have been different. But having been received in due course of business and having been held legitimately as a reserve fund, they remained nontaxable, although one purpose of selecting and retaining them was to escape taxation upon that amount of money.

We suggest, in view of a new trial, that the special issues submitted to the jury in reference to the money on hand and in transit and in the hands of other bankers should have been more specific. The first issue submitted is as follows:

"1. State the amount of money on hand or in transit, or in the hands of other banks, bankers, or brokers or others subject to draft, except United States treasury notes, which belonged to plaintiffs on the 1st days of January, 1887, and also 1888."

This involves a mixed question, and no instructions having been given upon it the jury were left to their own construction of the law.

Because the court failed to set aside the verdict and grant a new trial, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 28, 1890.