JENKINS et al. v. MORGAN. (No. 8385.)

(Court of Civil Appeals of Texas. Ft. Worth. June 3, 1916. On Motion for Rehearing, July 1, 1916.)

1. PAYMENT ☞38(1) — APPROPRIATION BY DEBTOR—VOLUNTARY PAYMENT.

Where a creditor has several claims against a debtor, a voluntary payment must be applied to the debt designated by the debtor.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 99, 128; Dec. Dig. ☞38(1).]

2. APPEAL AND ERROR ☞736 — ASSIGNMENT OF ERROR—INCLUDING ERRORS IN ONE ASSIGNMENT.

An assignment of error, which is a combination of several assignments contained in the motion for a new trial, is insufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3028, 3029; Dec. Dig. ☞736.]

3. APPEAL AND ERROR ☞728(1)—ASSIGNMENT OF ERROR—SPECIFICATION—EVIDENCE.

An assignment of error, which complains of evidence rulings as to several witnesses, and fails to set out the objections made to such rulings, is insufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3010; Dec. Dig. ☞728(1).]

4. APPEAL AND ERROR ☞499(3) — ASSIGNMENTS OF ERROR—SPECIFICATION—GROUND FOR OBJECTION.

An assignment of error is insufficient, where neither it, nor the bill of exceptions to which it refers, states what objections were made to the evidence in question.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2297; Dec. Dig. ☞499(3).]

5. APPEAL AND ERROR ☞213 — RESERVING GROUND FOR REVIEW—SPECIAL ISSUES—SEPARATE REQUESTS.

Where a request to submit a special issue contained two propositions, one of which was submitted to the jury, the failure to submit the other is not reversible error, in the absence of a separate request to do so.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1149, 1165, 1304–1308; Dec. Dig. ☞213.]

6. APPEAL AND ERROR ☞1062(2)—HARMLESS ERROR—FAILURE TO SUBMIT ISSUE—CURE BY VERDICT.

Under an issue of breach of warranty, failure to submit an issue whether plaintiff agreed to send defendant an expert to rig and operate the stump puller in question is not reversible error, where the jury found that the only warranty made related to what stumps the machine could pull.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4213; Dec. Dig. ☞1062(2).]

7. NEW TRIAL ☞108(3).—GROUNDS—NEWLY DISCOVERED EVIDENCE—SUFFICIENCY.

The trial court correctly denied a motion for new trial because of newly discovered evidence, which was based upon an affidavit that the lever to a stump puller, for whose purchase

price the note sued upon was given, was about 20 feet long, instead of 18 feet, as stated at the trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 226, 227; Dec. Dig. ⊚⟐108(3).]

On Motion for Rehearing.

**8. CHATTEL MORTGAGES ⊚⟐110—CONSTRUCTION—FUTURE ADVANCES.**

A chattel mortgage, with a printed clause covering future indebtedness up to $150, does not cover an indebtedness of $155 for a stump puller, where the parties intended the clause to cover future indebtedness for store supplies.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 192; Dec. Dig. ⊚⟐110.]

**9. CHATTEL MORTGAGES ⊚⟐240—PAYMENT—DELIVERY OF MORTGAGED PROPERTY.**

Where a creditor held chattel mortgages on a debtor's cotton and stump puller, a credit obtained by delivering some of the mortgaged cotton to the mortgagee should be applied on the cotton mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 505, 506; Dec. Dig. ⊚⟐240.]

Appeal from Johnson County Court; B. Jay Jackson, Judge.

Action by R. Morgan against W. N. Jenkins and others. Judgment for plaintiff, and defendants appeal. Affirmed as modified.

The first two assignments of error, and appellee's counter assignments thereto, are as follows:

First Assignment of Error.

The court erred in sustaining the appellee's objection to the testimony of Lon Hopkins, Kelley Stevenson, and John Jenkins, and in refusing to allow their evidence to go to the jury, which testimony would have been to the effect that they had seen other stump pullers in operation, and knew the amount of power or force used by other stump pullers, and had seen the appliances and equipment used, and that they had seen the stump puller in question, and that it would not do what they had seen other stump pullers do; it was not a satisfactory stump puller, was not first-class in every particular; with the same equipment and appliances it would not do the work they had seen other stump pullers do; that it would not pull stumps of the same or similar size, under the same or similar conditions, they had seen other stump pullers pull; that it would not pull stumps in size up to two feet in diameter; that it was not a success; that it would not do satisfactory work, and that it had no value as a stump puller.

First Counter Proposition to First Assignment.

The purported bill of exception, to the exclusion of the testimony of Lon Hopkins and the other witnesses referred to in the assignment, is fatally defective, and should not be considered, because it does not set out the objections made to the testimony in the lower court.

Second Counter Proposition to First Assignment.

The assignment is multifarious, and attempts to present two or more distinct questions, and therefore should not be considered.

Third Counter Proposition to First Assignment.

The jury having found that the only warranty made by the appellee of the stump puller was that it would pull any stump that any other puller of the same size would pull, evidence concerning other stump pullers was inadmissible, in the absence of evidence showing that they were the same size of the puller in controversy. As the appellants failed to show that the pullers referred to by the witnesses were the same size as the puller in controversy, the testimony was not relevant.

Fourth Counter Proposition to First Assignment.

The testimony was not admissible, on account of being mere opinions of the witnesses, and it was not shown that they were qualified to express such opinions. The question of their qualification was for the determination of the trial court, and is not reviewable, except on a showing of abuse of the discretion.

Fifth Counter Proposition to First Assignment.

No error was committed, because the court finally admitted all of the material facts which appellants state in the assignment were excluded.

Second Assignment of Error.

The court erred in permitting witnesses Kirby, Martin, Pierson, and Hill to testify as to the demonstration or experiment made on the farm of Henry Martin, and to the effect that the stump puller evidenced no difficulty, and seemed to do all that a stump puller could do, all of which was inadmissible, because the conditions of the experiment and appliances used were not similar to the stump puller used by Jenkins.

First Counter Proposition to Second Assignment.

No error is presented because other witnesses were permitted to testify without objection to the same facts testified to by Kirby, Martin, Pierson, and Hill complained of in the assignment.

Second Counter Proposition to Second Assignment.

It was not necessary that the conditions surrounding the demonstration or use of the puller on the Martin farm should be the same as when it was in use by Jenkins. The appellee merely took the puller out and pulled stumps, and the testimony of the action of the puller while in use was admissible on the plea of breach of warranty and the contention that the puller was worthless and would not pull stumps.

Third Counter Proposition to Second Assignment.

No error is presented, because the conditions under which the puller was used or demonstrated at the Martin farm were substantially similar to the conditions under which Jenkins used it.

Fourth Counter Proposition to Second Assignment.

Appellants contend the testimony was not admissible because a different lever was used. The lever was not a part of the puller, and when Jenkins bought the puller he made his own lever. When he brought the puller back at the time the demonstration was made on Martin's farm, he did not bring his lever; hence it became necessary for the appellee to furnish one. This circumstance did not affect the admissibility of the testimony.

Johnson & Harrell, of Cleburne, for appellants. Walker & Baker, of Cleburne, for appellee.

BUCK, J. Appellee brought this suit upon two promissory notes; the first note being in

the principal sum of $418, signed by appellants, W. N. Jenkins and J. A. and W. L. Donoho, and secured by a chattel mortgage signed by Jenkins on 2 mules, 45 acres of cotton, 50 acres of corn, a cultivator, and a wagon. The second note was in the principal sum of $155, secured by a chattel mortgage on one stump puller; note and mortgage signed by Jenkins alone. Plaintiff sued for his debt, evidenced by the two notes, principal, interest, and attorney's fees, and for foreclosure of his mortgages.

Appellants pleaded that there had been a payment by Jenkins of $105.10, by cotton delivered by him to Morgan, and that Jenkins had requested at the time of said delivery that it be applied on the $418 note; the payment having been by defendant applied on the $155 note. This payment was in addition to the settlement of an open account owing to Morgan by Jenkins, the payment of which is not objected to by appellants in their brief. Appellants further pleaded that it was the agreement and understanding of all parties that the mortgage taken to secure the $418 note should be made payable to the Donohos, who signed the note as accommodation paper, instead of being made payable to Morgan. Jenkins pleaded further that the stump puller, for which he had given the $155 note and the second mortgage, did not comply with the warranties made and did not do the work promised, and that after a thorough test of said stump puller, and after its inability and unfitness to do the work promised had been thoroughly established, he had returned it to Morgan, and that the second note and mortgage should be canceled for failure of consideration. Other pleas were contained in the original and supplemental pleadings of the parties, but sufficient, we think, has been given for the purpose of this opinion.

The cause was submitted to the jury on special issues, and in answer thereto the jury found:

(1) That plaintiff did not agree to accept the note for $418, signed by Jenkins and the two Donohos, unsecured by a mortgage in his (Morgan's) favor, and did not agree that the mortgage given by Jenkins should be in favor of the Donohos.

(2) That the defendants agreed that the open account of Jenkins to Morgan should be paid out of the proceeds of the crop of Jenkins before the payment of the note for $418..

(3) That the defendant knew at the time it was made the kind of mortgage executed by Jenkins to Morgan.

(4) That the only warranty made by Morgan as to the stump puller was that "it would pull any stump that any puller of same size would pull."

(5) That the stump puller had not failed to comply with the warranty made, and that Jenkins had made no complaint to Morgan during the year 1914 as to any alleged failure.

(6) That Jenkins instructed plaintiff to apply the proceeds of the eight bales of cotton sold, first, to the open account; and, second, to the $418 note.

Other issues were presented and answered, but, except as noted hereafter in this opinion, the above we consider sufficient for this statement.

Upon this verdict the court entered judgment as follows: Prorating the $105.10, crediting $76.64 on the $418 note, and $28.41 on the $155 note, and giving a judgment for plaintiff against all parties defendant for balance of $418 note, to wit, $399.23, and giving judgment for plaintiff against Jenkins for balance of $155 note, or $147.87, with a foreclosure of both mortgages. Defendants appeal.

[1] We conclude that the trial court erred in prorating the $105.10 payment between the two obligations. The jury found, as they were justified by the evidence, that Jenkins instructed plaintiff to apply this payment on the $418 note. This he had a right to do. If a creditor, having several debts against a debtor, receive a voluntary payment from the debtor with instructions to appropriate it to one of them, it must be so appropriated. Eylar v. Read et al., 60 Tex. 387, 389; Larkin v. Watt, 32 S. W. 552; Crawford v. Pancoast, 62 S. W. 559; 4 Green's Digest, 8845–8846, and authorities there cited; 30 Cyc. 1227 et seq. Therefore we sustain appellants' fourth assignment, which urges as error this action of the court.

[2-4] We feel that appellee's objection to the consideration of appellants' first and second assignments must be sustained, because (1) they are not even substantial copies of any assignment contained in the motion for new trial, being, at best, only a combination and a reconstruction of several assignments therein contained; (2) they are multifarious, and complain of the exclusion in the one instance, and the admission in the other, of the testimony of several witnesses, and they do not set out the objections urged thereto in the trial court; (3) the bill of exceptions to which reference is made to sustain assignment No. 1 does not state what objections were urged to the admission of the testimony. Buckler v. Kneezell, 91 S. W. 367; Dixson v. Cooper, 178 S. W. 695; Watson v. Patrick, 174 S. W. 633; National Live Stock Ins. Co. v. Gomillion, 174 S. W. 330; Ruth v. Cobe, 165 S. W. 530. Moreover, we are of the opinion that, were the assignments given consideration, no reversible error would be found, for the reasons, in the main, set forth in appellee's counter assignments.

[5, 6] The third assignment urges error in the failure of the court to submit the following special issue:

"Did the plaintiff, R. Morgan, in the sale to the defendant, W. N. Jenkins, of the stump pull-

er in question, guarantee the same to give satisfactory service as a stump puller with the team of mules then owned by the defendant, Jenkins, and that he (Morgan) would send a competent person, or expert, to show the defendant, Jenkins, how to rig and operate said stump puller?"

If this assignment be not subject to the vice of multifariousness, as urged by appellee, and therefore not required to be considered by us, we are of the opinion that the first question was submitted and answered in special issue No. 7 given, to wit:

"Did the plaintiff, R. Morgan, in the sale to the defendant, Jenkins, of the stump puller in question in this suit, guarantee the same to give satisfactory service as a stump puller with the team of mules then owned by the defendant Jenkins?" To which the jury answered: "No."

If the defendants desired the submission of the other question contained in the special charge tendered, it was their duty to submit it separately, and their failure so to do would preclude their successfully urging error to the court's action in failing to submit two issues in the same special charge, one of which had been already submitted in the main charge. Griffin v. Heard, 78 Tex. 607, 14 S. W. 892; McWhirter v. Allen, 1 Tex. Civ. App. 649, 20 S. W. 1007; G., etc. Ry. Co. v. Clark, 2 Willson Civ. Cas. Ct. App. § 512. Moreover, if there had been a promise on the part of plaintiff to send an expert to show Jenkins how to "rig and operate the puller," it was no part of the warranty; the jury having found that the only warranty made by plaintiff was that the stump puller "would pull any stump that any puller of same size would pull." The evidence, further, was uncontradicted that the appellee did send a representative out to Jenkins' place twice for the purpose of showing Jenkins how to rig and operate the puller. It is true that defendants claim that such representative was not an expert; but, in view of what we have heretofore said, we do not think any reversible error is presented in this assignment.

[7] The fifth assignment is as follows:

"The court erred in refusing to set aside the judgment and grant the appellants a new trial, because of the newly discovered evidence as to the experiments or tests made by the appellee, Morgan, with the stump puller on the farm of Henry Martin, which newly discovered evidence shows said experiments to have been made by a different stump puller, or a stump puller with different appliances and equipment than the Jenkins' stump puller."

We do not think there is any merit in this contention. It is uncontradicted that the same stump puller was used in both tests. So far as the record discloses, the only difference in the equipment of the stump puller as used by Jenkins on his farm, and as used by Morgan on the Martin farm, was as to the lever. The plaintiff testified, and his testimony is uncontradicted, that it is not customary to furnish a lever with a stump puller. Martin made his lever out of a green sapling, and it was claimed by plaintiff and some of the witnesses that the lever, being green, would under strain bend or "cup up."

Morgan constructed a lever by nailing two timbers 2x8 and 18 feet long together. The only difference between the testimony of plaintiff's witnesses and the witnesses whose affidavits were offered on the motion for new trial, as to this lever, was that plaintiff's witnesses testified that the lever was 18 feet long, and one of defendants' affiants stated that the beam was "about 20 feet long." After an examination of the affidavits attached to defendants' motion for a new trial, we have concluded that the trial court did not err in overruling the motion, and the fifth and last assignment is overruled.

For the reasons given, the judgment of the court below will be reformed, so as to appropriate the entire payment of $105.10 to the $418 note, and, as so reformed, the judgment will be affirmed, with the costs of appeal taxed against appellee.

### On Motion for Rehearing.

[8] Appellee presents an insistent motion for rehearing, contending that the $105.10 prorated by the court below, and by this court wholly allowed as a credit on the $418 note first declared upon in appellee's petition, was not a voluntary payment by the defendant Jenkins, in the sense that he was thereby, as we held, entitled to direct its application, and that therefore appellee had the right, under the authorities hereinafter cited, to apply the payment in whole or in part to the note for $155, also declared upon. The basis for the contention is a provision in the mortgage given to secure the first note that in general terms is made to apply to any future indebtedness, and the following cases are cited in support of the contention: Case Threshing Machine Co. v. Matthews, 188 Mo. App. 429, 174 S. W. 198; Rush v. First National Bank, 160 S. W. 325; Taylor & Co. v. Cockrell, 80 Ala. 236.

In the case first cited, which was by a Missouri Court of Appeals, it was said, among other things, that:

"Where a creditor holds several securities for the same debt, he is entitled to enjoy the full benefit of all without restriction, unless some contractual stipulation provides otherwise. For instance, if the creditor holds several notes, as here, against the same debtor, all of which are secured by a mortgage, and on one or more of the notes a personal security is bound as well, he is entitled to the benefit of all of the securities he has taken. Therefore, if the property be sold under the mortgage, the creditor may apply the proceeds of the sale to the payment of the notes not otherwise secured, and pursue the personal security for the payment of those to which he has affixed his name in assurance of their payment; otherwise, the creditor will be denied all the right to the benefit of all of the security he has taken for the debt. The point has been expressly decided, as will appear by reference to the following cases: Mathews v. Switzler, 46 Mo. 301; Sturgeon Bank v. Riggs, 72 Mo. App. 239."

It is insisted that the facts of this case bring it within the principle so declared. We find that the mortgage given to secure the $418 note signed by Jenkins and his sure-

ties, J. A. Donoho and W. L. Donoho, contains the following recitals:

"This conveyance, however, is intended as a trust for the better securing R. Morgan, of Grandview, Texas, in the payment of my indebtedness to them, the same being evidenced by a certain promissory note, of which the following is a substantial copy:

" '$418.00 Grandview, Texas, 5/23/1914.

" 'Oct. 1, 1914, after date, without grace, I, we, or either of us, promise to pay to the order of R. Morgan, of Grandview, Texas, four hundred and eighteen dollars, for value received, at the Farmers' & Merchants' National Bank, with interest from maturity at the rate of ten per cent. per annum and ten per cent. of principal and interest for attorney's fee, if placed in the hands of an attorney for collection.

" 'Due ......                    ..................

" 'No. ....... P. O. ...... W. N. Jenkins.'

"And, whereas, it is contemplated that the first party may hereafter become indebted unto R. Morgan, of Grandview, Texas, in the further sum or sums of money to the amount of $150.00, either by note or open account, which said indebtedness now accrued, or to accrue in the future, it is agreed, shall all be payable at Grandview, Texas, and bear interest at the rate of ten per cent. per annum from date of actual accrual until paid, by whatever means the same shall accrue; and this conveyance is made for the security and enforcement of the payment of the said present and future indebtedness."

There is, therefore, at least apparent force in the contention appellee now makes that the error of the trial court, if any, was in not applying the entire $105.10 payment to the $155 note only secured by a chattel mortgage. But after a careful consideration of the entire record we find ourselves indisposed to disturb our original conclusions. In the first place, we are not all entirely agreed that the payment of the $105.10 by Jenkins was not a voluntary payment, the writer particularly being inclined to think it was, in which event, under all of the authorities, Jenkins had the right to direct the application of the payment, as he undoubtedly did; and, second, that regardless of whether the payment was voluntary, we all are of opinion that its proper application is as announced in our original opinion. As we construe the evidence, we are not inclined to the view that the appellee's first mortgage covered the debt evidenced by the $155 note. The provision quoted is evidently part of a printed form in common use by merchants who take crop mortgages, for the identical provision appears in the chattel mortgage given to secure the $155 note, and to this debt nothing appears indicating that the provision has any relevancy. The evidence shows that the first mortgage matured by its terms on October 1, 1914. The second matured on November 15, 1914, and contains the following express provision:

"It is agreed that R. Morgan will extend the payment of this note [the $155 note], or any part thereof, provided I am unable to pay it all this fall."

The second mortgage covered an indebtedness in excess of the indebtedness to which the future or contingent indebtedness was limited in the first, and, as shown by the evidence, the future indebtedness in contemplation at the time of the execution of the first mortgage bears no relation to a stump puller, for which the second note was given, but had reference to the usual account for farm supplies. To illustrate: Appellee in testifying said:

"Mr. Jenkins read the mortgage that secured the $418 note. He made no complaint about it. He had it in his hand and signed it. He heard the part of it read there that provides for $150 additional indebtedness, and we discussed about Jenkins buying more goods from me. The account amounted to $58.93. The books there will show the amount of this account."

At another point he testified:

"Jenkins had the mortgage [the $418 mortgage] in his hands and signed it. We discussed about Jenkins running an account and buying goods from me."

The stump puller, for which the $155 note was given, and upon which the second mortgage rested, seems to have been later secured by Jenkins in furtherance of an object altogether disconnected with farm supplies for that crop year. He testified:

"Some time later I wanted to buy a stump puller. There was about 65 acres of stumps on the place I was working, which belonged to Mr. George Hurley, and he told me that if I would clear it of stumps he would give me all I could make off of about 180 acres of land for two years. This 180 acres of land included the 65 acres that was in stumps. I had previously cleared a part of this land, and a part of it was in pasture; but I was to get all I could make off of the 180 acres for two years, if I would clear the 65 acres of stumps. I was trying to buy a stump puller, and was at Mr. Morgan's store in Grandview, Tex., and he told me that he had a stump puller there that he would sell me for $155."

[9] If, as we think the evidence tends to show, the $418 mortgage only covered the note therein specified and the account of $58.93 for merchandise, in payment of which it is undisputed part of the mortgaged crop was applied, then it was proper to apply the $105.10 payment on the $418 note, regardless of Jenkins' direction to have it so done. As said in one of the cases appellee cites (Taylor v. Cockrell, 80 Ala. 236):

"The general rule is that, while a creditor has the right to apply a general payment, the debtor having made no specific application, the law, in the absence of an agreement to the contrary, applies a payment realized from a particlar fund in relief of such fund. On this principle a mortgagee, in the absence of an agreement with the mortgagor, is bound to apply moneys realized from the sales of property covered by the mortgage to the mortgage debt; but, as between mortgagor and mortgagee, such money may, by the consent of the mortgagor, be applied to the payment of an unsecured debt."

In addition to what we have said, it may not be inappropriate to further observe that the record shows that appellee's mortgage was foreclosed on the stump puller yet in his possession, and there is no evidence pointed out tending to show that it is of less value than the amount of the $155 indebtedness to secure which the mortgage was given, and it is therefore not apparent that appellee can be materially prejudiced by the

application made by this court of the $105.10 payment.

We conclude, on the whole, that the motion for rehearing should be overruled; and it is so ordered. .

---

⑤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes