Edward L. SNOW et ux., Appellants,

v.

GIBRALTAR LIFE INS. CO. OF AMERICA,
Appellee.

No. 15492.

Court of Civil Appeals of Texas.

Dallas.

June 19, 1959.

Rehearing Denied July 24, 1959.

William Andress, Jr., Dallas, for appellants.

Robert C. Johnson, Dallas, for appellee.

CRAMER, Justice.

Edward L. Snow and his wife, Gloria Gene Snow, filed this suit against the Gibraltar Life Insurance Company of America, hereinafter called Insurer, alleging in substance, that about September 11, 1952, at Ladd Air Base, Alaska, Insurer, through its agent solicited, sold and delivered certain life insurance policies, stating to Snow, et ux. that it had made provision for payment of premiums therein by means of regular monthly allotments, to be authorized by the Snows, that the Snows applied for a $1,000 double indemnity, nonparticipating whole life policies with premiums payable for life, on each of their three children, Allen Dee Snow, Ruth Anne Snow and Philip Gene Snow, plus a $1,500 indemnity policy on the life of Gloria Gene Snow; the total premiums to be $5.98 per month; $1.17 thereof for the Allen Dee Snow premium. Such monthly premiums of $5.98 were paid by allot-

ment, monthly since about October 1, 1952, and received by the Insurance Company, accepted and retained by it. That thereafter on or about July 3, 1953, Allen Dee Snow, insured under policy No. 43549, was struck and killed by an automobile in Three Rivers, Michigan, dying as a result of skull fracture; that appellants, the Snows, on or about July 4, 1953 made demand on appellee Insurance Company to pay the amount due; but appellee, on July 9, 1953, denied liability and refused payment and though often requested, still fails and refuses to pay the $2,000 due under the policy; and appellee, having failed to pay the amount due within thirty days after demand, appellants sought recovery of 12% penalty, $750 attorney's fees, court costs and general relief under Art. 3.62, Texas Insurance Code, V.A.T.S.

The Insurer answered by special exceptions, general denial, special denial, that it did not create or deliver the policy sued on, that it did receive the application, but it stated Allen Dee Snow was in good health at a time when he had been advised to have medical and surgical care, and was suffering from disabilities occasioned by asthma and cerebral ataxia. The Company rejected the application, and no policy of life insurance on the life of Allen Dee Snow was ever issued, no premium had been paid on the policy on Allen Dee Snow's life; no money has been paid with instructions to it to apply same upon any insurance on the life of Allen Dee Snow, and no agreement has ever been made to issue insurance on the life of Allen Dee Snow, and prayed that the Snows take nothing, etc. The answer was sworn to by the general counsel for the Insurance Company.

In supplemental petition, Snow plead that the company is estopped to deny, and has waived any right to urge, such defense, because the policies each provided the company had 60 days from the date thereof to consider and act on the application, and if not refused in that period by appellee, or if within such period applicant did not refuse a policy, or applicant did not receive notice of approval or rejection, then the application should be deemed to have been declined by the company; and more than five months after the date of the application, without notice having been given to Snow of acceptance or rejection of such application; the Insurance Company did issue policies upon said application February 16, 1953, dating them back to January 1, 1953, and because of the transfer of Snows from air base to air base, none of such policies were received until long thereafter, after they had followed the Snows from Station to Station; that the application on the life of Ruth Anne Snow showed monthly premiums to be $1.18; on Allen Dee Snow, $1.17; on Philip Gene Snow $1.16; and on Gloria Gene Snow, $2.47; a total of all said sums being $5.98 which was the monthly sum due by Gloria Gene Snow and the three children, and such sums having been accepted by the Company, the Company cannot now be heard to state it did not issue the policies.

The Insurance Company filed a supplemental answer, in answer to the supplemental petition, in which it sets out that (1) Snow submitted to it an offer in writing which among other things provided: "(2) The insurance hereby applied for shall not be considered in force until a policy shall have been issued by the Company for the amount and form of policy and manner of premium applied for in Question 15 in accordance with the Company's published rates and said policy manually received and accepted by me and the first premium paid thereon, all during the good health of the child proposed for insurance and during my good health." And alleged no policy of any kind was issued by the Company and none delivered to Snow; and no policy was manually received and accepted by Snow in accordance with said offer, and therefore, there is no contract of insurance in force on the life of Allen Dee Snow.

Appellee alleged the offer and application contained this provision: "(3) The Company shall have sixty days from the date

hereof within such period a policy has not been received by me or if I have not received notice of approval or rejection then this application shall be deemed to have been declined by the Company." And alleged the company did not issue a policy on the life of Allen Dee Snow within sixty days of the date of the application, or at any time thereafter, and no policy was received, and the application "was therefore declined by operation of the terms of the plaintiffs' own application, and in addition was expressly rejected and declined" by the company, and prayed as in its original answer.

The evidence shows no policy was issued within the time set out (60 days). However, it is undisputed that the Company received and retained, each month the $5.98 allotment which covered $2.47 premium on Gloria Gene Snow policy; $1.18 premium on the Ruth Anne Snow policy; and $1.17 premium on the Allen Dee Snow policy, and $1.16 on the Philip Gene Snow policy.

The trial court entered a take nothing judgment against the appellants based on its findings of fact and conclusions of law filed at the request of appellants, Snow, et al. The material findings of fact were: III. On September 11, 1952, the plaintiffs caused to be submitted to the defendant at its office in Dallas, Texas, a written application for a policy of life insurance in the amount of $1,000 and for double indemnity upon the life of Allen Dee Snow. Said application showed that Allen Dee Snow at the time the application was made was not an insurable risk because of the state of his health and the defendant refused to accept said application and rejected the same for that reason. IV. The defendant did not issue and did not deliver to plaintiffs any policy of life insurance upon the life of Allen Dee Snow. The plaintiffs did not receive such a policy from defendant. On November 11, 1952, the plaintiffs knew or should have known that their application for insurance upon the life of Allen Dee Snow had been rejected, but plaintiffs did not make any inquiry of defendant concern-

ing said application. V. Plaintiffs paid no money to defendant within sixty days after the date of their application for insurance upon the life of Allen Dee Snow. The only payments made by plaintiffs to defendant were made by allotment checks of the United States Government for the months of January through July, 1953. No instructions accompanied such Government allotment checks received by defendant. All such Government allotment checks were in lump sums usually including allotment made by several thousand persons. For the months of January through July, 1953, by said Government allotment checks defendant received $5.98 per month for the account of plaintiffs. These payments for the account of plaintiffs were applied by defendant from the beginning upon the premiums accruing on life insurance policies issued by the defendant and delivered to plaintiffs on the lives of Gloria Gene Snow, Philip Gene Snow and Ruth Anne Snow. Defendant did not accept any payment from plaintiffs as a premium on any policy insuring the life of Allen Dee Snow. Plaintiffs did not change their Government allotment and have never demanded return of any money thus paid to defendant. VI. The defendant did not mislead the plaintiffs into believing that their application for a policy of life insurance upon the life of Allen Dee Snow had been accepted by the Company nor that a policy of life insurance had been issued pursuant to said application."

Conclusions of Law.

I. "There was no meeting of the minds of plaintiffs and defendant, and no contact was ever made between them for the defendant to insure the life of Allen Dee Snow. II. There being no contract of insurance between plaintiffs and defendant, the defendant is not liable to the plaintiffs upon the cause of action asserted in this suit. III. The defendant is not estopped to deny that it rejected plaintiffs' application, plaintiffs' Exhibit No. 4. IV. Defendant is not estopped to deny that it is-

sued a policy of insurance upon the life of Allen Dee Snow."

Thereafter, on request of Snow, et al., the trial court filed additional findings as follows: 1. "On September 11, 1952 plaintiffs caused to be submitted three additional applications for separate policies of insurance upon the lives of Gloria Gene Snow, Ruth Anne Snow and Philip Gene Snow, each application providing that the policy applied for should be paid for by a monthly allotment out of the pay of Sgt. Edward L. Snow. 2. Plaintiffs never thereafter modified or changed said applications or the allotment of $5.98 per month payable to defendant. 3. The application for insurance upon the life of Allen Dee Snow, showing that he was not an insurable risk because of the state of his health, was continuously in the possession of defendant and its representatives, after it was received in the home office of defendant in September 1952. 4. On February 16, 1953 the defendant issued policies on the lives of Ruth Anne Snow, Philip Gene Snow and Gloria Gene Snow, naming January 1st, 1953 as the effective date of each policy. 5. Plaintiffs paid no money to defendant within sixty days after the date of the applications for insurance upon the life of Ruth Anne Snow, Philip Gene Snow and Gloria Gene Snow. 6. Defendant sent no notice to plaintiffs of its rejection of the application for insurance upon the life of Allen Dee Snow. 7. Defendant did not advise plaintiffs of how it was applying the money received for plaintiffs' account."

From the judgment entered on such original and supplemental findings of fact and conclusions of law, appellants Snow, et ux. have duly perfected this appeal here briefing two points of error.

Points 1 and 2 are as follows: (1) "When the four written applications for insurance on the Snow family showed that $5.98 per month total allotment by Sgt. Snow was to be applied $2.47 to Gloria Gene Snow, $1.18 to Ruth Anne Snow, $1.17

to Allen Dee Snow, and $1.16 to Philip Gene Snow, the company had no right to make any other application of such funds, its duty being to use such funds exactly as instructed or to return them without unilateral deviation. (2) When the company permitted its agent to take an application for insurance, expressly stating that the subject child had cerebral ataxia, which constituted a forbidden risk under its medical underwriting manual, as part of a group of four related applications in a family unit, all providing for presumption of rejection if not acted on within sixty days, and retained such applications without processing or acting thereon for five months, until it finally issued policies on three of the four applications, backdating them six weeks, accepting and claiming the entire allotment designated to cover premiums on all four policies, and never notifying the applicant of a changed appropriation of his payments or of rejection of the fourth application on the life of the child having cerebral ataxia, until after such child had been killed in an automobile accident more than ten months after the application, it was estopped to deny liability or the existence of the policy for which it had accepted seven months premium and which it had never actively declined."

Appellee's counterpoints 1, 2 and 3 were as follows: (1) The judgment of the trial court should be affirmed because appellee did not agree to insure the life of Allen Dee Snow; (2) No contract to insure the life of Allen Dee Snow was made because appellee did not accept the application within sixty days as appellants' application required; (3) No contract to insure the life of Allen Dee Snow was made because appellants' application therefore provided that no contract would be in force until a policy had been manually delivered to appellants and no such policy was delivered.

The record shows the company received the allotment made by Sgt. Snow ($5.98 per month) of which $1.17 was to cover the Allen Dee Snow policy. The company in allocating the $5.98 received by it, did

not, as to the monthly premiums on the Allen Dee Snow application, apply such allotment to the application, but on its own volition applied the (Allen Dee Snow) $1.17 per month, as collected, as an overpayment on the Gloria Gene Snow policy, without notifying or securing the consent thereto by Edward L. Snow, or any other proper interested party. The record shows the premiums were "To be paid by Class E Allotment on Sergeant Edward L. Snow, RA 36419144, with three children, Ruth, Philip and Allen. Total amount of allotment $5.98".

The company admitted receipt of the Snow allotment of $5.98 per month. Also its Vice-President in charge of underwriting, and its Treasurer, testified that the $1.17 per month instead of being credited to Allen Dee Snow's premium, was credited as overpayment on Gloria Gene Snow's policy, until Sergeant Snow cancelled his allotment because of the company's failure to pay appellants' claim in connection with the death of Allen Dee Snow.

Appellants Edward L. Snow, et ux. contend the company had no authority or right to credit the payments other than as designated in the written instructions to-wit: the insureds named in the allotment.

■■ We must agree that the company did not have the authority to apply the $1.17 of Allen Dee Snow's premiums payments other than as authorized. Had appellants sued for return of the premium money so misapplied they doubtless would have been entitled to recover on that basis. As early as November 1883 our Supreme Court passed on the question in Eylar v. Read, 60 Tex. 387. The headnote reads as follows: "1. Appropriation of Payments.—If a creditor having several debts against a debtor receive money with instructions to appropriate it to one of them, it must be thus appropriated, and its appropriation being once thus directed, cannot be afterwards changed by the creditor without the debtor's assent. 2. Same.—The mere execution and delivery after payment

of a receipt, showing the appropriation of the payment otherwise than as directed when payment was made, imposes no obligation on the debtor to have the receipt corrected, and works no estoppel on the debtor's right to enforce the appropriation of the payment in the manner first directed by him." This case has been quoted and followed on the question of the appropriation of payments in Jenkins v. Morgan, Tex. Civ.App., 187 S.W. 1091; See 30 Texas Digest Payment, ☜39(1), p. 83.

■ However we cannot sustain appellants' point one for reasons which are brought out by appellee in counterpoints 1, 2 and 3. The rule is stated in American Life Insurance Company v. Nabors, Tex. Com.App., opinion adopted by the Supreme Court, 124 Tex. 221, 76 S.W.2d 497, 500: "All of the authorities class insurance contracts, as such, as fundamentally the same as other contracts as regards offer and acceptance. There is no contract unless and until the application for insurance is accepted by the insurance company."

The application here was a mere offer to make contract of insurance. Liquids Dispatch Line v. Texas Power & Light Co., Tex.Civ.App., 6 S.W.2d 169; King v. Kloh, Tex.Civ.App., 10 S.W.2d 1043; Smith v. Rio Grande National Life Ins. Co., Tex. Civ.App., 227 S.W.2d 579 (err. ref.) The application was not accepted, and no binding contract of insurance was made by the company.

■ Appellee further contends that provisions in an application for insurance which make the delivery of the policy a condition precedent to the formation of an insurance contract are held valid in Texas. Citing Smith v. Rio Grande National Life Ins. Co., Tex.Civ.App., 227 S.W.2d 579 (writ expressly refused). Such holding, in our opinion, is applicable to the language used. Appellants' first point is overruled.

■ We see no merit in appellants' second point. As pointed out by appellee in

connection with its fourth counterpoint, the facts as found by the trial court, supported by the evidence, negative appellants' claim that they were entitled to recover on the grounds of estoppel.

We might further add, as contended by appellee in its fifth counterpoint, in Texas contract rights cannot be created by estoppel. Southland Life Ins. Co. v. Vela, 147 Tex. 478, 217 S.W.2d 660. Appellants' suit is based on an alleged policy which they plead appellee issued. The evidence shows the application was not accepted by the company and it refused to issue a policy on such application. There was therefore no policy in force, no contract in existence, as to Allen Dee Snow, at the material time here. Appellants' second point is overruled.

Under the record here the judgment of the trial court must be and it is

Affirmed.